[Crim. No. 6296. Fifth Dist. Aug. 5, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RODERICK CHRISTOPHER JONES, Defendant and Appellant.

752

## COUNSEL

Roderick P. Bushnell, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Wm. George Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRANSON, Acting P. J.—**

### INTRODUCTION

We hold under the principles of *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], that a police officer must take reasonable precautions to preserve for trial his original handwritten notes made in the course of interrogating a criminal defendant unless the interrogation

is tape recorded and the tape is preserved for trial. "Reasonable precautions" mean a good-faith attempt to adhere to systematic procedures designed to preserve the notes for trial. If the officer fails to comply with this rule, the sanction will be suppression of all testimony by the officer concerning any statements made by the defendant during interrogation, assuming the requisite showing of materiality has been made.

 In the present case, trial counsel's failure to make a *Hitch* objection to the introduction of the officer's testimony concerning appellant's statements constituted ineffective representation by counsel under *People* v. *Pope* (1979) 23 Cal.3d 412, 424-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R. 4th 1]. We reverse the judgment.

### THE CASE BELOW

Appellant was convicted by jury of second degree burglary and sentenced to state prison for the middle term of two years. He burglarized the home of an acquaintance, stealing musical equipment valued at approximately $5,000.

Detective Dave Gianotti of the Modesto Police Department investigated the burglary. After obtaining information that appellant may have been involved in the burglary, Gianotti contacted appellant who was in jail on an unrelated charge. Interrogation began at 8:30 on the morning of December 16, 1981. Appellant was informed of his constitutional rights and signed a written waiver of those rights. He said he understood those rights and agreed to talk with Gianotti. Appellant appeared to be coherent when he agreed to talk.

Appellant initially denied involvement in the burglary; however, according to Gianotti, after further questioning appellant admitted he had committed the burglary with a friend.

Detective Gianotti testified that when he obtained the statement from appellant he had intended to tape record the conversation, but appellant refused to allow the interview to be recorded. Gianotti wanted to record appellant's statements so "there would be no problems of me misinterpreting what he told me." The next day Gianotti dictated the police report which purported to recite the conversation between appellant and the officer. The report was typed by a secretary. Gianotti reviewed the report after it was typed and testified that it accurately reflected what he had dictated.

The police report was read by Gianotti at trial. According to the report, at the time of the interrogation appellant's appearance was dirty, his de-

meanor disorganized and his speech was "mumbled." Moreover, on direct examination when Gianotti was asked, "Did he appear to be under the influence of any intoxicant or narcotics?" the officer replied, "Yes sir."[1]

Gianotti subsequently clarified his testimony as well as the contents of the police report by stating: "I am referring to his demeanor after he became confused in our interrogation. Mr. Jones in my mind was on the verge of being very irrational. He sort of lost control after I started interviewing him. After I started laying out the facts, he became very confused. He tried to lie. I pointed out the inconsistencies. He became just full of anxiety and I was a little concerned at that point, so I told him to sit back, relax, be calm and I will give you some information. You can confirm whether it's the truth or not. I explained to him what I had done, my investigation, that Mr. Vernon had been arrested. I had gotten statements from him. I had gotten statements from Mr. Palecek. That's how our interview went forward. When I went in the jail, Mr. Jones was cool, calm and collected. Had no problem with sickness. He later became disoriented after I proceeded to interview him."

Gianotti admitted that nothing in the police report indicated appellant was cool and calm before the interrogation began.

Gianotti said he took handwritten notes during appellant's interrogation. When asked what happened to those notes he responded: "Well, I thought they were in this folder or somewhere else at the department and I haven't been able to locate them. Sometimes I save notes, sometimes I don't." Gianotti was also asked for the notes at the preliminary hearing, but he was unable to locate them at that time.

Gianotti stated that he did not normally keep notes from interviews: "If the report is poorly typed and not an accurate reflection of my notes, I will sometimes save my notes or re-dictate a report. If the report, crime report that is typed up by the secretary is an accurate reflection of my notes and our interview, I generally will discard the notes." Gianotti further testified that the purpose of taking notes was not to keep them as part of the report but to transfer the notes eventually to a completed police report. No departmental policy existed concerning preservation of notes taken in the course of an investigation. Destruction of notes was left to the discretion of the individual officer.

---

[1] This answer may have been a mistake by the detective since the question concerning intoxicants or narcotics was asked along with a number of other questions where the detective answered "Yes sir." We can speculate that the detective may have intended to answer "No sir."

Appellant testified on his own behalf and denied breaking into the victim's residence and taking the musical equipment. He also denied confessing to Detective Gianotti. He said the detective was lying. In response to a question about why he had not wanted the interview with the detective tape recorded, appellant replied, "I didn't think nothing of it . . . . I felt that if he took notes he would keep the notes and put [everything] into the police report." Appellant also testified that he thought that if the police report later became an issue, the notes would show that what he had said was true.

## DISCUSSION

Appellant contends he was denied adequate assistance of trial counsel because his attorney failed to make a *Hitch* motion to suppress appellant's confession on the ground the police officer's handwritten notes of the interview during which the confession was obtained had been lost or destroyed.

In *Hitch,* our Supreme Court held that the results of a breathalyzer test were inadmissible when the ampoules and their contents had been lost; the failure to preserve favorable evidence to a defendant was a violation of due process. ■ Nevertheless, not every instance of neglect to preserve evidence requires dismissal of the charges or suppression of the evidence. Lost evidence is deemed material for the purposes of triggering the due process concern of *Hitch* if there is a *reasonable possibility* it would be favorable to the defendant on the issue of guilt or innocence. (*People* v. *Hitch, supra,* 12 Cal.3d at pp. 649-654; see also *People* v. *Zamora* (1980) 28 Cal.3d 88, 99-100 [167 Cal.Rptr. 573, 615 P.2d 1361]; *People* v. *Nation* (1980) 26 Cal.3d 169, 176 [161 Cal.Rptr. 299, 604 P.2d 1051].) Even if the threshold of materiality is apparent, a trial court need not impose sanctions unless a defendant makes a showing of "'*substantial* materiality.'" (*People* v. *Garnica* (1981) 121 Cal.App.3d 727, 733 [175 Cal.Rptr. 521]; see also *People* v. *Claxton* (1982) 129 Cal.App.3d 638, 657 [181 Cal.Rptr. 881].)

In addition to materiality, *Hitch* holds the adequacy of the law enforcement agency's efforts to preserve evidence is to be considered. If the prosecution can show that the governmental agency involved established, enforced and attempted in good faith to adhere to rigorous, systematic procedures designed to preserve the evidence, then sanctions for nondisclosure should not be applied. (*People* v. *Hitch, supra,* at pp. 652-653.) ■ This "second prong" of *Hitch* is not at issue in the present case because the testimony of Detective Gianotti establishes no systematic procedures existed for preserving notes of interrogations, i.e., preservation was left to the discretion of the individual detective or officer.

In *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 752-755 [175 Cal.Rptr. 738, 631 P.2d 446], the defendant was interviewed by a deputy sheriff. The

interview was not recorded, but the deputy took handwritten notes. The officer "later prepared a typed transcription, compared it with the handwritten notes for accuracy, and then destroyed the notes." (*Id.*, at pp. 752-753.)

The Supreme Court commented: "The Attorney General argues that *Hitch* is inapplicable to the present case because the investigating officers preserved the results of the Norwalk interrogation through Higgins' transcribed notes. The investigator's failure to record the interview and their destruction of the handwritten notes, however, made it impossible for the defense to verify whether the typed transcript reflects the handwritten notes or the reality of the interrogation. In this respect the present case closely resembles *Hitch,* in which the police preserved the results of the breathalyzer test, but effectively precluded the defendant from verifying the accuracy of those results.

"Two Court of Appeal opinions discuss analogous issues but point to different results. In *People* v. *Goss, supra,* 109 Cal.App.3d 443, the police accidently destroyed a tape recording of a confession; the Court of Appeal found a violation of *Hitch* and upheld suppression of the confession. The court in *In re Gary G.* (1981) 115 Cal.App.3d 629 . . . , on the other hand, ruled that police destruction of rough notes recording an interview with a witness did not violate *Hitch.*

"We need not resolve this implicit conflict because in the present context the admission of defendant's statements, whether erroneous or not, could not constitute reversible error." (*Id.*, at p. 755, fn. omitted.)

*Murtishaw* clearly suggested to trial counsel that *Hitch* error may be triggered in cases such as the one at bar.

In *People* v. *Goss* (1980) 109 Cal.App.3d 443 [167 Cal.Rptr. 224], this court held it was *Hitch* error, albeit harmless, for the trial court to refuse to suppress prosecution testimony concerning a defendant's first unrecorded statement when the prosecution failed to establish it had used sufficient precautions to avoid erasure of the tape used to record the defendant's second statement since the erased tape could have had impeachment value as to prosecution testimony concerning both statements of the defendant. (*Id.*, at pp. 448-456.) A reasonable inference arises from *Goss* that if a confession is not tape recorded, the officer's notes of the conversation should be preserved because of their potential impeachment value.

Respondent relies on several cases which hold that a defendant's due process rights are not abused when an officer discards his rough notes after

insuring they are accurately recorded in the formal police report typed from the notes. We find none of these cases dispositive. *In re Jessie L.* (1982) 131 Cal.App.3d 202, 208-211 [182 Cal.Rptr. 396], involved rough notes taken by a police officer during an interview of someone other than the defendant which related to testimony supporting probable cause to arrest the defendant. The reviewing court's rhetorical statement that neither *Hitch* nor the Constitution "require[s] police officers to act like pack rats, saving every scrap of paper generated in an investigation" is inappropriate in the context of the facts of this case. (*Id.,* at p. 211.) Here, the notes might have been material to impeach Detective Gianotti's testimony about the defendant's demeanor during the interrogation, which was not reflected in the typewritten report. Although we can accept the proposition that officers need not save "every scrap of paper" in most cases, when a defendant's confession is at issue, due process considerations mandate that every reasonable effort be made to preserve the interview notes.

*People* v. *Savage* (1982) 129 Cal.App.3d 1, 2-4 [180 Cal.Rptr. 761], involved handwritten notes made by a police officer during an interview with a complaining witness soon after the charged offenses occurred. The notes were incorporated in a formal police report and were then destroyed or discarded in accordance with the officer's practice. The conviction was affirmed by holding that absent a showing of bad faith, the discarding of a police officer's raw or rough notes did not constitute a denial of due process or other right. There was no showing of substantial materiality of the notes for impeachment of the witness "under the circumstances of this case." (*Id.,* at p. 3.)

In *In re Gary G.* (1981) 115 Cal.App.3d 629, 639-642 [171 Cal.Rptr. 531], the trial court denied a defense motion to strike a portion of a police officer's testimony dealing with notes he had taken during an interview with a witness (not the defendant), even though the officer had not retained the notes. The Court of Appeal in a two-to-one opinion affirmed, holding that such notes need not be preserved for discovery purposes. The majority noted the minor had received a copy of the final report, and there was no showing of error or bad faith on the officer's part in destroying the notes *or that the material sought to be discovered constituted significant evidence.* Justice Reynoso dissented, arguing the approach taken by the federal cases should be applied in California. If the notes had not been destroyed, the defendant would have had the right to discover the notes (*Funk* v. *Superior Court* (1959) 52 Cal.2d 423, 424 [340 P.2d 593]). " 'It seems too plain for argument that rough [interview] notes from any witness . . . could prove . . . material.' " (*In re Gary G., supra,* at pp. 643-644 (dis. opn. Reynoso, J.) quoting *United States* v. *Harrison* (D.C. Cir. 1975) 524 F.2d 421, 427.)

*United States* v. *Harris* (9th Cir. 1976) 543 F.2d 1247, 1248, cited by Justice Reynoso, states: "We reject the contention of the government that the good-faith destruction of rough notes in accordance with normal agency procedure is justifiable. Notes taken by FBI agents in interviews either with prospective government witnesses or, as in this case, with the accused, constitute potentially discoverable materials. [Citations.] Since the routine disposal of potentially producible materials by the FBI amounts to a usurpation of the judicial function of determining what evidence must be produced in a criminal case, we hold that such original or rough interview notes must be preserved."

The only question remaining is whether appellant has satisfied the materiality requirement of *Hitch*. As we explained in *People* v. *Goss, supra,* 109 Cal.App.3d 443, "there was a reasonable possibility that the [destroyed] tape could have impeached the officer's account of [defendant's] statement to him." The defendant in *Goss* had testified at the hearing on the *Hitch* motion that he never made incriminating statements about a plan to commit a burglary. The interrogating officer claimed defendant had mentioned the plan in both the recorded and unrecorded statements. Therefore, defendant's denial of these admissions established the tapes' materiality. (109 Cal.App.3d at pp. 454-455.)

In the instant case, appellant not only denied below that he told Detective Gianotti he had burglarized the residence of the victim, but appellant contends on appeal that his trial counsel should have objected to the introduction of his confession because he did not knowingly and intelligently waive his right to remain silent as required by *Miranda* and its progeny. Appellant also argues that his statements were not voluntary. Since the detective attempted to explain the statements regarding appellant's demeanor in the report based on his independent recollection several months after the interview, fundamental fairness requires that appellant be permitted to impeach the detective's explanation by use of the original notes taken at the time of the confession. Thus, the notes must be deemed to have substantial materiality for impeachment purposes.

Unless an interrogating officer is required to preserve his interview notes for possible use at trial, a defendant is placed in an impossible position. He cannot impeach the officer's testimony or the contents of the typewritten report since the notes are unavailable. If we accept respondent's position, we must presume that because Gianotti said the report reflected verbatim what was in his notes, the notes would not shed any light on appellant's demeanor at the time of the interrogation. It is quite possible, however, that due to an error or omission by the detective, the report did not contain all the information that was in the notes.

We limit our opinion to the precise facts of the instant case: rough notes of an interview with a criminal suspect who is thereafter prosecuted for a crime.

Appellant's trial counsel was required under the standard of *People* v. *Pope, supra,* 23 Cal.3d 412, 425 to make a *Hitch* objection and to move to suppress the testimony of Detective Gianotti. A reasonably competent attorney acting as a diligent advocate would have done so. This case was tried on March 17, 1982. As we have noted, appellant testified that he assumed the notes would be kept to show what he said.

*People* v. *Murtishaw, supra,* 29 Cal.3d 733 was decided in 1981, and this court's opinion in *People* v. *Goss, supra,* 109 Cal.App.3d 443 was decided in 1980. Justice Reynoso's dissent in *In re Gary G.* (115 Cal.App.3d 629 [171 Cal.Rptr. 531]) was written in 1981. Thus, appellant's trial counsel was put on notice of the real possibility that a *Hitch* motion would have been successful if it had been timely made in the present case. The fact that there was no published opinion squarely in point on whether a police officer's notes of an interview with a defendant should be preserved under circumstances such as here, is of no importance. Under then existing law, reasonably competent trial counsel would have been alerted to the potential merits of the *Hitch* objection.

The judgment is reversed.

Zenovich, J., and Hanson (P. D.), concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 20, 1983. Mosk, J., Richardson, J., and Kaus, J., were of the opinion that the petition should be granted.