[No. B004779. Second Dist., Div. Five. Oct. 7, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
SAMMIE GONZALES ANGELES, Defendant and Respondent.

**COUNSEL**

Ira Reiner, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Jerry Weil and Albert J. Menaster, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**EAGLESON, J.**—The major issue in this case involves the application of the Truth-in-Evidence provision of Proposition 8 as interpreted by *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] to the request for suppression of a defendant's confession. Underlying this request was the negligent loss of handwritten notes taken at the original interview, making them unavailable for defendant's inspection.

### PROCEDURAL BACKGROUND

Defendant was charged in count 1 of an information with the crime of discharging a firearm at an occupied motor vehicle in violation of Penal Code section 246, and in count 2 with committing an assault with a firearm in violation of Penal Code section 245, subdivision (a)(2). As to the second count, it was also alleged that defendant was armed in violation of Penal Code section 12022, subdivision (a).

After the matter was called for trial, defendant moved for a pretrial hearing pursuant to Evidence Code section 402, to suppress custodial statements made by him to a deputy sheriff. The trial court granted the motion to suppress and, based upon the People's representation that they were unable

to proceed as a result of the trial court's ruling, the case was dismissed pursuant to Penal Code section 1385.[1]

The People have appealed from this order of dismissal. We reverse the order of dismissal and remand the case to the trial court for resumption of criminal proceedings.

### FACTS

The facts underlying the dismissal were predicated primarily on the testimony of Deputy Sheriff Castillo. He testified that he spoke to the defendant at the Lynwood sheriff's station about the offenses with which defendant is presently charged. The custodial interview was conducted in English even though the defendant was raised in the Philippines and Tagalog is his native language.

Castillo first told defendant that he wanted to talk about the two shootings that are the basis of the two counts in the information. The defendant replied that he knew about the shootings. Castillo then handed the defendant a card setting forth an advisement of constitutional rights and read to him from a duplicate of the card as follows: "(1) You have the right to remain silent. (2) Anything you say can and will be used against you in a court of law. (3) You have the right to talk to a lawyer before we talk to you and to have him present while we talk to you. (4) If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning free of charge." While Castillo was reading to him, defendant looked at the card in his possession.

After being read this advisement, defendant told Castillo that he understood the rights explained to him, that he wanted to talk about the case, and that he did not want a lawyer present during the interview. The interview lasted about 20 to 30 minutes, and was not tape recorded. Defendant spoke in English during the entire interview. He appeared to understand what Castillo said, and Castillo had no difficulty in understanding defendant. Defendant did not ask for an interpreter.

During the interview Castillo took four to five pages of handwritten notes on a yellow legal pad, "attempting to quote him [defendant] directly where possible." These notes formed the basis for Castillo's later preparation of a formal written report. The formal report contained a summary of Castillo's interview with defendant. Castillo estimated that this report had "90 to 95 percent of the information" that defendant gave him and contained all

---

[1]The motion to dismiss was made by the defendant. (See fn. 7.)

the information that Castillo considered to be important. The handwritten notes did not include anything that was omitted from the report, except possibly "some small words, maybe a change in sentence structure." Neither the handwritten notes nor the formal report was shown to the defendant for his confirmation as to content or accuracy.

Castillo placed the original notes in his desk. Between sessions of the 402 hearing he looked for the notes in his desk and file cabinet, but could not find them. He speculated that they "must have accidentally been thrown out or misplaced in another file that was thrown out."

At the time of the interview with defendant (Aug. 4, 1983), the sheriff's department did not have any policy regarding the preservation of preliminary notes. Castillo, however, had a routine practice of retaining notes of interviews in the case folder.

Defendant's mother testified that her son does not understand English very well and, speaking Tagalog to him at the time of his arrest, told him nòt to sign anything until she had retained a lawyer. She stated that defendant had called her from the jail and asked her in Tagalog when she was going to get a lawyer for him. She further testified she came to Los Angeles in 1972. Her husband does not understand Tagalog and speaks to her and the defendant in English.[2] The defendant has resided in the United States for three years. He has five younger siblings, two of whom do not understand Tagalog and converse with defendant only in English.

Defendant testified that Officer Castillo had presented him with two identical admonition and waiver of rights cards. On the first card the defendant wrote answers "Yes," "Yes" and "Yes" in response to three questions.[3] The defendant further stated that after Castillo read the first card, he stated that defendant could not see or talk to a lawyer, gave him a second card and told him to write two "yeses" and one "no." The second card was introduced into evidence as People's exhibit 1. Defendant further testified that at all times he wanted a lawyer, that he asked for an interpreter, that he could speak English and that he had taken and passed the driver's license test in English. He further testified he could read English, but that he understood only a little of what was on the waiver card. He also stated he had trouble understanding the officer and told him that.

---

[2]The defendant's mother and her husband have lived with the defendant for three years. However, the husband is not the defendant's father.

[3]The three questions with answers are:
"Do you understand each of the rights explained to you?" Both cards *Yes.*
"Do you want to talk about this case or not?" Both cards *Yes.*
"Do you want a lawyer or not?" First card *Yes;* second card *No.*

The trial court found "that the officer did not have a systematic method of preserving his notes," and on the authority of *People* v. *Jones* (1983) 145 Cal.App.3d 751 [193 Cal.Rptr. 663] suppressed defendant's statements to Castillo.[4,5,6] Thereafter on defendant's motion the court dismissed the information.

DISCUSSION

I

Defendant preliminarily argues that the ruling of the trial court underlying the dismissal is not appealable because it is an effort to gain pretrial review of an evidentiary determination and that this type of appeal is not permitted by statute. We disagree.

In support of his argument, defendant relies upon *People* v. *Municipal Court (Ahnemann)* (1974) 12 Cal.3d 658, 660-661 [117 Cal.Rptr. 20, 527 P.2d 372]; *In re Anthony H.* (1983) 148 Cal.App.3d 1123, 1126 [196 Cal.Rptr. 448]; and *People* v. *Rawlings* (1974) 42 Cal.App.3d 952, 956 [117 Cal.Rptr. 651].

None of these cases is applicable. The rulings in *Ahnemann* (evidence suppressed when the People did not produce breathalyzer test ampoules) and in *In re Anthony H.* (improper use during trial of a confession previously suppressed) did not result in dismissals of the underlying cases. Both proceeded to trial.

In *Rawlings,* for reasons which are unexplained, defendant made an *informal* motion to suppress the results of a gas chromatograph test administered to determine the amount of alcohol in his system. After certain stipulations and an offer of proof, the trial court rejected the offer and ordered the evidence suppressed. The court, on its own motion, dismissed the case when the city attorney indicated that the case could not go forward without the suppressed evidence. The order of dismissal was appealed to the appellate department of the superior court which dismissed the appeal as being taken from a nonappealable order. The Court of Appeal accepted certification and affirmed. It noted: "In short, the motion and the order resulted in nothing more than an *informal indication of how the judge would later rule*

---

[4]Since Deputy Castillo's testimony was suppressed, it was not necessary for the trial court to determine the issue of credibility between him and the defense witnesses.

[5]In the reporter's transcript, the statements of defendant are "viewed as a confession." We treat these statements as a confession in this opinion.

[6]The trial court also found that defendant's testimony raised a materiality issue.

*on the question. The order was not binding on the judge or the parties.* [Citation.] [¶] The defendant had no right to unilaterally seek a pretrial ruling on such a purely evidentiary question and the city attorney was not obliged to participate. Nor was the defendant in any position to move for a dismissal of the action based upon the pretrial ruling. [Citations.] Absent an agreement by both parties to conduct such hearing pretrial, the court even on its own motion could not have ruled on the matter and dismissed the action. [Citation.]" *(People v. Rawlings, supra,* 42 Cal.App.3d at pp. 956-957; italics added.)

"We hold that if the parties voluntarily participate in such an *informal* pretrial proceeding the prosecution in the face of an adverse ruling has two options available: [¶] (1) Proceed to trial and press for a reversal of the ruling with the trial judge, or [¶] (2) Accept the ruling of the trial judge and request a dismissal which would be nonappealable." *(Id.,* at p. 959; italics added.)

In the matter sub judice, the case had been called for trial and the entire proceeding pursuant to Evidence Code section 402 was formally conducted. As a result the ruling was binding. ▮▮ ▮▮▮▮ ▮▮▮▮ Unlike *Ahnemann* and *In re Anthony H.,* this ruling, underlying the 1385 dismissal, was dispositive because the People could not proceed.[7]

"(a) An appeal may be taken by the people from any of the following:

". . . . . . . . . . . . . . . .

"(8) An order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant

---

[7]Technically speaking, the order of dismissal here is improper because it was granted by the court upon the defendant's motion. Only a court on its own motion, or on the application of the prosecuting attorney, and in furtherance of justice, may order the dismissal of an action. (Pen. Code, § 1385.) See concurring opinion of Justice Kaus, *People v. Dewberry* (1974) 40 Cal.App.3d 175, 185 [114 Cal.Rptr. 815].

However, the majority's reasoning in *Dewberry* is apposite. If we were to reverse this matter because the court acted in excess of its powers in dismissing the case, "[t]he parties would find themselves in the same position they were in just before the dismissal, when the People stated they were unable to proceed because of the court's ruling. To reverse in such a technical manner promotes unnecessary multiplicity of the proceedings. It was the trial court's own actions that compelled the dismissal and we choose to treat the dismissal as having been made by the court on its own motion. (*People v. Curtiss* (1970) 4 Cal.App.3d 123 [84 Cal.Rptr. 106].) The minute order stated the dismissal was pursuant to section 1385 of the Penal Code. The record before us demonstrates there was a pretrial hearing to consider a motion to suppress evidence; that the motion was granted, at which time the People declared their inability to proceed. This was adequate to notify this court on the reason for the dismissal, and complied with section 1385." (*People v. Dewberry, supra,* 40 Cal.App.3d at p. 184, fn. omitted; see also *People v. Rawlings, supra,* 42 Cal.App.3d at p. 957.)

has waived jeopardy." (Pen. Code, § 1238.)[8] There is no contention here that the defendant was placed in jeopardy. "It is clear the People's inability to proceed was due to the order suppressing evidence. Therefore, the merits of the basis for the section 1385 dismissal are cognizable on this appeal under section 1238, subdivision (a)(8). [Citations.]" (*People* v. *Mills* (1985) 164 Cal.App.3d 652, 655 [210 Cal.Rptr. 669]; see also *People* v. *Dewberry, supra,* 40 Cal.App.3d 175; *People* v. *Harris* (1976) 62 Cal.App.3d 859 133 Cal.Rptr. 352]; *People* v. *Bradley* (1984) 159 Cal.App.3d 399 [205 Cal.Rptr. 485].)

## II

Defendant next contends that the loss of the original handwritten notes of Officer Castillo requires suppression of defendant's statements. We do not agree.[9]

In *People* v. *Jones, supra,* 145 Cal.App.3d 751, 753-754, the court decreed ". . . a police officer must take reasonable precautions to preserve for trial his original handwritten notes made in the course of interrogating a criminal defendant unless the interrogation is tape recorded and the tape is preserved for trial. 'Reasonable precautions' mean a good-faith attempt to adhere to systematic procedures designed to preserve the notes for trial. If the officer fails to comply with this rule, the sanction will be suppression of all testimony by the officer concerning any statements made by the defendant during interrogation, assuming the requisite showing of materiality has been made."

The *Jones* court, on facts generally resembling those here—an unexplainable loss of original notes of a custodial interview with the defendant, and the later preparation of a formal report predicated on the lost notes—suppressed the testimony of the officer concerning the defendant's statements. In ordering the dismissal, *Jones* relied on the case of *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].

The same court that decided *Jones* filed its opinion in *People* v. *Tierce* (1985) 165 Cal.App.3d 256 [211 Cal.Rptr. 325] on March 5, 1985, after the trial court ruling here. The *Tierce* court "effectively overruled" the

---

[8]All section references herein are to the Penal Code.

[9]Defendant's brief mixes together two issues that will be discussed separately. The first is the negligent loss of the original handwritten notes and the second is the existence of the first admonition and waiver of rights card that allegedly was executed prior to People's exhibit 1.

precedent it spawned in *Jones* and adopted the federal standard of *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528].[10]

To understand the application of *Trombetta,* we must first begin with *Hitch,* which involved the intentional but nonmalicious destruction of breathalyzer test ampoules. The California Supreme Court there held that federal due process requires that if "there is a reasonable possibility" that evidence would be favorable to the defendant on the issue of guilt or innocence it must be disclosed. (*People* v. *Hitch, supra,* 12 Cal.3d at p. 649.) The duty of disclosure is operative as a duty of preservation. As a judicially created sanction for the prosecution's failure to disclose because of its failure to preserve, the results of the breathalyzer test were to be excluded from evidence. The requirement of materiality of the nondisclosed evidence was subsumed within the "reasonable possibility" test.

Later California cases concluded that a trial court need not impose sanctions unless a defendant made a showing of "substantial materiality." (*People* v. *Garnica* (1981) 121 Cal.App.3d 727, 733 [175 Cal.Rptr. 521]; *People* v. *Claxton* (1982) 129 Cal.App.3d 638, 657 [181 Cal.Rptr. 281].)

*Hitch* also decreed, in the second prong of its holding, that sanctions for nondisclosure would not be applied if the prosecution showed that the governmental agency involved established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the evidence. (*People* v. *Hitch, supra,* 12 Cal.3d at pp. 652-653.)

However, the passage of Proposition 8 on June 8, 1982, added article I, section 28, subdivision (d) to the California Constitution, which is commonly referred to as the Truth-in-Evidence provision. As noted in *Tierce,* 165 Cal.App.3d at page 262, "The effect of that provision was, inter alia, to require the courts of this state to look to federal law in deciding issues concerning the exclusion of evidence." As the California Supreme Court recently said in *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744]: "What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent the exclusion remains federally compelled." (Italics in original.) *Tierce* then adopted the *Trombetta* rule.

In *Trombetta,* the police failed to preserve Intoxilyzer breath samples of suspected drunk drivers. The California Court of Appeal ruled that due

---

[10]Defendant invites our attention to nine lower federal court cases which are alleged to hold that the destruction of notes of interviews of the defendant, and even witnesses, "violates the defendant's rights." Since these lower federal court cases were decided before *California* v. *Trombetta,* we view *Trombetta* as the controlling authority.

process demanded that the breath samples be preserved, and upon a defense motion, suppressed the test results on the grounds that the officers failed to preserve the tests.[11] When the California Supreme Court denied a petition for review, the Supreme Court of the United States granted certiorari and reversed. ■ Speaking for a unanimous court, Mr. Justice Marshall wrote that to meet the requirement of constitutional materiality, the "evidence must possess *both* an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California* v. *Trombetta, supra,* 467 U.S. at p. 489 [81 L.Ed.2d at p. 422]; italics added.)

In its analysis, the *Trombetta* court relied in part upon the reasoning of its earlier decision of *Killian* v. *United States* (1961) 368 U.S. 231 [7 L.Ed.2d 256, 82 S.Ct. 302], a note destruction case. Defendant there argued that the destruction of an FBI agent's preliminary notes of the oral reports of witnesses, used to prepare an investigatory report, violated due process because the notes would have been helpful to his defense. The Supreme Court held that the destruction of the notes did not give rise to a claim of constitutional dimensions for: "If the agents' notes . . . were made only for the purpose of transferring the data thereon . . ., and if, after having served that purpose, they were destroyed by the agents in good faith and in accord with their normal practice, it would be clear that their destruction did not constitute an impermissible destruction of evidence nor deprive petitioner of any right." (*Killian* v. *United States, supra,* 368 U.S. at p. 242, 7 L.Ed.2d at p. 264.)

"It has been said of *Killian* that there '[t]he Supreme Court . . . enunciated its standard for evaluating the legal effect of notes destruction by directing lower courts to make findings on three points: (1) whether the notes were made for the purpose of transferring the data, (2) whether the agent acted in good faith in destroying the notes, and (3) whether the agent acted in accordance with the normal procedure of the governmental unit in so destroying the notes. The court held the absence of at least one of those elements to be a necessary, but not a sufficient, condition for a new trial. In order to obtain that remedy, the defendant must also overcome the doctrine of harmless error and demonstrate that the particular destruction of evidence resulted in *actual harm* to the defense.' (Note, *The Right to Independent Testing: A New Hitch in the Preservation of Evidence Doctrine*

---

[11]On this subject, the *Trombetta* court commented that the California Court of Appeal "implicitly" accepted the proposition that breath samples would be useful to the defendants, which assumption was rejected with the comment that ". . . breath samples were more likely to provide inculpatory rather than exculpatory evidence." (*California* v. *Trombetta, supra,* 467 U.S. at p. 488 [81 L.Ed.2d at p. 422], fn. omitted.)

(1975) 75 Colum.L.Rev. 1355, 1357, fns. omitted; italics in original.)"
(*People* v. *Tierce, supra,* 165 Cal.App.3d at p. 264.)

 As we read *Killian* v. *United States, supra,* 368 U.S. at page 242 [7 L.Ed.2d at page 264], and *California* v. *Trombetta, supra,* 467 U.S. at page 491 [81 L.Ed.2d at page 423], they conclude that there is no deprivation of a federal due process right if destruction of the original notes complies with the tripartite test of *Killian.* Above and beyond that, with respect to the issue of "constitutional materiality," *Trombetta* places the burden on the defendant to show that the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California* v. *Trombetta, supra,* 467 U.S. at p. 489 [81 L.Ed.2d at p. 422].)

The facts elicited at the section 402 hearing satisfy *Killian* and contraindicate defendant's compliance with *Trombetta.*

There is an inference to be drawn that it was the custom and practice of Officer Castillo to prepare a formal written report based on his handwritten notes. This inference stems from the fact that a formal report was in fact prepared, and there is no argument advanced that the underlying notes had any other independent purpose. We conclude, therefore, that they were made for the purpose of transferring the data therefrom to the formal report.

The negligent loss of the notes comports with the requirement of good faith. Good faith, in this context, is the absence of malice and absence of design to seek an unconscionable advantage over the defendant. There is no evidence of official animus toward defendant on the part of Castillo or any conscious effort on his part to suppress exculpatory evidence. The record shows only that the original notes were lost, not purposefully destroyed or secreted so as to prejudice defendant with respect to their possible content.

Finally, the People have shown that Castillo followed his usual custom and practice in preserving the notes. Since there was no departmental policy concerning preservation or destruction of preliminary notes at the time in question, Castillo's personal practice of preserving notes complied with the third requirement of *Killian.* The trial court also found this procedure adequate.

Defendant continues that *Trombetta* requires the suppression of defendant's confession because "the notes at issue clearly possess an exculpatory value apparent when they were destroyed." Defendant reasons that since many of his statements were taken verbatim, the lost notes would clearly

resolve any dispute over his comprehension of English and thus his knowledge and understanding of his constitutional rights.

A thorough reading of the record leads us to a contrary conclusion. We cannot divine the exact contents of the lost notes nor can the defendant. He never saw the contents of the original handwritten notes or the final report. Since the officer testified that he had no difficulty in understanding defendant, it is improbable that what was written would have reflected defendant's subjective asserted unfamiliarity with the English language. The officer also testified that 90 to 95 percent of the information in the original notes was recorded in the formal report, and that what was not placed in the formal report was not important. Consequently, defendant's assertion that the lost notes supported his claim that he did not understand his rights because of his problem in speaking and reading English is pure speculation. Likewise, there is nothing in the record to otherwise circumstantially suggest that defendant's statements that he did not understand the contents of the waiver card and that he had trouble understanding Castillo would find their way into the rough notes.

Also, the defendant was able to present "comparable evidence by other reasonably available means." His own testimony and that of his mother bore directly upon his claim of unfamiliarity with the English language. Defendant has not met either prong of the *Trombetta* rule.

Undaunted by the *Killian* holding that compliance with its tripartite test does not result in the imposition of sanctions, defendant seeks to distinguish *Killian* on the ground that there the intentionally but nonmaliciously destroyed notes were incorporated into receipts that might have been helpful in cross-examining an informant witness on a collateral matter, while here the negligently lost notes went to the issue of whether a confession was knowingly and intelligently made because, so it is argued, the notes related directly to whether the defendant understood enough English to comprehend what the officer told him about his rights and whether the defendant demanded a lawyer before questioning. In short, defendant suggests that the *Killian* test be elasticized so as to render it inapplicable to cases involving the confession of a defendant. *Killian* does not discuss this qualitative limitation, and defendant cites no authority for his assertion. We reject the suggestion because it would be a denial of equal protection of the law. (Cal. Const., art. IV, § 16, subd. (a); U.S. Const., 14th Amend.)

Defendant also argues that *Killian* should not be followed because every single word in the original notes was transferred into the records that were preserved. A close reading of the facts does not support defendant's argument. In *Killian,* FBI agents took notes from informants which were incor-

porated into receipts to be signed by them as evidence of cash reimbursement for expenses advanced. The only inference we can draw from the reported facts is that the original information collected by the agents "including particularly reports by the witness of his reimbursable expenses and the receipts which he signed evidencing reimbursement for those expenses" was faithfully transcribed in only 9 of 124 instances. ██ *Killian* v. *United States, supra,* 368 U.S. at pages 238, 240 [7 L.Ed.2d at pages 262, 263], imposes no requirement of verbatim transcription, nor do we. The essence of Castillo's handwritten notes was incorporated into the formal report which is sufficient.

██ Defendant criticizes *Tierce* as misapplying the holding of *In re Lance W.* and argues that *Jones* is still viable because independent state due process grounds still exist. (Cal. Const., art. I, §§ 7, 15.) It is true, as defendant suggests, that *In re Lance W.* only decided that Proposition 8 eliminated judicially created exclusionary rules for the violation of search and seizure provisions of the state and federal Constitutions, except to the extent that the exclusion remains federally compelled.

Yet the *Tierce* court squarely held that "In view of the mandate of California Constitution, article I, section 28, subdivision (d), both the due process issue and the materiality issue in the case now before us must be decided by virtue of the application of principles of federal law. *California* v. *Trombetta, supra,* 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528], having defined the limits of the federal due process clause and established the applicable materiality standard in the area of our present concern, becomes the guide upon which we must determine the continued viability of the *Jones* case." (*People* v. *Tierce, supra,* 165 Cal.App.3d at p. 263.) As we have noted, *Tierce* then overruled *Jones* and applied the *Killian* principle as described in *Trombetta* to a preliminary note destruction case. We believe *Tierce* is correct on principle and is supported by *In re Lance W.*

The specific question decided in *In re Lance W.* was "whether either our vicarious exclusionary rule or article I, section 13, survives Proposition 8 as a basis for exclusion of evidence." (*In re Lance W., supra,* 37 Cal.3d at p. 879.)

We are, however, not so much concerned with these holdings in *In re Lance W.* as we are with the manner in which our Supreme Court there interpreted the imprimatur of section 28, subdivision (d) of the initiative.

With the avowed intent to "give effect to the expression of popular will" (*id.,* at p. 879), the Supreme Court examined the analysis of the legislative

analyst, ballot summary, ballot arguments, preamble to the initiative, and of course, the initiative itself.

■ In the text of its opinion, the court concluded (1) that the enacted language, "[R]elevant evidence shall not be excluded in any criminal proceeding" was clear and unambiguous. (*In re Lance W., supra,* 37 Cal.3d at p. 886.) (2) "The express intent of section 28(d) is to ensure that all relevant evidence be admitted. That purpose cannot be effectuated if the judiciary is free to adopt exclusionary rules that are not authorized by statute or mandated by the Constitution." (*Id.,* at p. 889.) (3) ". . . Proposition 8 did not repeal either section 13 [state prohibition against unreasonable searches and seizures] or section 24 [rights guaranteed by the state Constitution are not dependent on those guaranteed by the federal Constitution] of article I. The *substantive scope of both provisions remains unaffected by Proposition 8.*" (*Id.,* at p. 886.) (4) "What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*Id.,* at pp. 886-887; italics in original.) (5) ". . . both rules [vicarious exclusionary rule and personal exclusionary rule] are of judicial creation, and relate to remedy rather than the scope of substantive rights protected by either Constitution." (*Id.,* at p. 887.) (6) "Implicit in the limitation on the courts' power to exclude relevant evidence to the enumerated statutory exceptions [in 28(d)] is a limitation on the power of the court to create nonstatutory exclusionary rules, whether denominated rules of procedure, rules of evidence, or substantive rules, for the exclusion of unlawfully seized evidence if those rules afford greater protection to a criminal defendant than does the Fourth Amendment." (*Id.,* at pp. 888-889.)

■ In the final analysis, there is no functional difference between a judicially created exclusionary rule for unlawful search and seizure violations and one utilized for loss of evidence cases. In each instance relevant evidence on the issue of guilt or innocence is being excluded, and the reasoning of *In re Lance W.* should be applicable to both situations. We hold that it is.

For these reasons, therefore, we reject the defendant's contention that the California due process clause provides independent protection apart from the federal Constitution. (Cal. Const., art. I, §§ 7, 15.) The substantive scope of these provisions remains but the remedies for violation are controlled by federal law.

## III

■ In his final major contention, defendant continues that the "retention of all materials," including the lost card, would resolve the dispute as to

whether there were one or two cards. This is a catch-22 proposition and assumes a critical fact not established. Officer Castillo testified there was no first waiver card; defendant testified there was. On the one hand, the officer could not be expected to preserve, nor concomitantly lose, something that never existed in the first instance. On the other hand, defendant attempts to create an issue of due process concern by asserting, even assuming, the existence of a card he signed which Castillo said never existed, and then asking for suppression of the confession because of loss of this evidence. This court cannot solve this dilemma unless there is first a factual finding that the first waiver card actually existed.[12]

## Disposition

The order of dismissal is reversed. The matter is remanded to the superior court for resumption of criminal proceedings.

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied October 30, 1985, and on October 28, 1985, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied January 23, 1986. Bird, C. J., Mosk, J., and Reynoso, J., were of the opinion that the petition should be granted.

---

[12]If the trial court finds that the only waiver card signed by defendant is People's exhibit 1, the issues presented by Killian/Trombetta are never reached. If the trial court finds that there were two cards signed by defendant, the court must determine: (1) Whether the lost card was completed as defendant testified; and, if it was, (2) was it superseded by the execution of People's exhibit 1 so as to constitute a knowing, intelligent and voluntary waiver of defendant's Miranda rights. (People v. Jimenez (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672].) In any event, it seems to us that the issues surrounding the missing card are best addressed by a Miranda analysis rather than by a Killian/Trombetta analysis.