[No. A103183. First Dist., Div. Three. Dec. 9, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC JERMAINE COLES, Defendant and Appellant.

[No. A106613. First Dist., Div. Three. Dec. 9, 2005.]

In re ERIC JERMAINE COLES on Habeas Corpus.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, only the Introduction, Background, part I.C. of Discussion, and Disposition of this opinion are certified for publication.

Counsel

Barry M. Karl, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Jamie M. Weyand, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**CORRIGAN, Acting P. J.—**

### INTRODUCTION

A jury found Eric Jermaine Coles guilty of arson and attempted arson. He raises a number of challenges to his conviction and sentence on appeal and in a related habeas corpus petition. We deny the petition and affirm the judgment.

### BACKGROUND

In December 2002 Priscilla Rosales lived with various family members including her mother, Rene Jones, and her sister, Kristina. Defendant was Priscilla's boyfriend and lived in an abandoned car parked in the garage.

On the evening of December 3, 2002, Kristina had an altercation with the driver of an SUV. After the driver knocked Kristina to the ground, Priscilla urged defendant to "be a man" and "do something." Defendant was told the SUV had come from the garage of a large apartment building across the street from the residence. Later that night Jones saw defendant walking near the garage and standing at its doorway.

About 11:30 p.m. defendant came to the apartment asking for Priscilla. He looked odd and appeared to be drunk. As he stood at her door, Jones heard a loud gunshot or explosion. Alarms went off and people began leaving the building across the street. Jones later told the police that defendant said he had blown up a car. She also repeated defendant's statement to her daughter Priscilla.

About 10 minutes after the explosion Priscilla spoke with defendant, who told her he had "just lit up" a car. Priscilla told police about the admission but subsequently denied it, asking to withdraw her statement. At trial she claimed not to remember defendant's statement. Jones testified at trial that she had lied about defendant's admission, but that she was "almost positive" he had set the fire. Priscilla testified that defendant smokes, carries matches, and had borrowed her lighter that night.

A surveillance video in the garage captured someone loitering near both a Ford and a Mercedes SUV. The tape shows that after a glow developed on the far side of the Ford, the loiterer departed. The glow brightened and debris burst from the Ford. Jones identified defendant as the person on the tape.

Defendant was arrested and interviewed. He told police he did not remember anything, but that if he had set the fire it was "because of the drinking, to satisfy Priscilla, and to get back at that person." At the officer's suggestion defendant wrote a letter of apology stating "I really wasn't trying to hurt anyone. I'm sorry your car was damaged due to my actions. I would love to help with any damages."

The Ford sustained substantial damage. In addition, a paper towel had been rolled up and shoved into the fuel neck of the Mercedes. The towel had been ignited, but the flame had gone out before causing any damage. A fire inspector concluded the fire had been intentionally set.

Defendant testified that he had a history of alcohol and mental health problems and explained that he drinks to keep from hearing voices. He had

been drinking the day of the fire. He remembered learning of the altercation and Priscilla telling him to "do something." Sometime thereafter he walked to a friend's house and returned to his car in the garage at 1:30 or 2:00 in the morning. He did not remember setting the fire and did not believe he had done so.

The jury convicted defendant of arson and attempted arson. He waived his right to a jury trial on two prior conviction allegations, which the court found to be true. Defendant was sentenced to a total term of nine years and timely appealed.

## DISCUSSION

## I.  The Appeal

### *A., B.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C.  *Destruction of Investigatory Notes*

The prosecutor called Priscilla and Jones as witnesses. When both denied having heard defendant's admissions, the investigating officers were called. Both officers testified they had taken notes of their witness interviews. Following departmental policy, they destroyed the notes after using them to prepare their reports. Defendant asserts the failure to preserve and turn over these raw notes violated the reciprocal discovery provisions of Proposition 115, the Crime Victims Justice Reform Act. (Pen. Code, §§ 1054.1, 1054.3.)[1] (See generally *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 364 [285 Cal.Rptr. 231, 815 P.2d 304].)

A complete review of defendant's position requires some context. For over 40 years the courts of California and the United States have been discussing the obligation of government agents to retain their notes.

*Killian v. United States* (1961) 368 U.S. 231 [7 L.Ed.2d 256, 82 S.Ct. 302] (*Killian*) involved a perjury prosecution from the 1950's. Killian, a labor

---

[*]See footnote, *ante*, page 1049.

[1] All further statutory citations are to the Penal Code.

leader, had been convicted of committing perjury when he swore in an affidavit that he was not a member of, or affiliated with, the Communist Party. Two undercover FBI operatives testified that they had infiltrated the organization and seen Killian at party meetings in which he had actively participated. FBI agents had received oral reports from the operatives but did not keep their original notes. Killian sought a dismissal or new trial because the notes had been destroyed. The Supreme Court ultimately remanded the case for further factual findings. In doing so, the court observed: "Almost everything is evidence of something, but that does not mean that nothing can ever safely be destroyed." (*Id.* at p. 242.)

■ *People v. Angeles* (1985) 172 Cal.App.3d 1203 [218 Cal.Rptr. 756] (*Angeles*), contains an extensive discussion of the constitutional and statutory requirements relating to the preservation of investigatory notes and other evidence. In *Angeles*, Justice Eagleson traced the evolution of the rules beginning with *Killian, supra,* 368 U.S. 231 forward to *California v. Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528] (*Trombetta*), and through the application of the Truth-in-Evidence provisions added to the California Constitution in 1982 by Proposition 8. Justice Eagleson adopted the analysis of *People v. Tierce* (1985) 165 Cal.App.3d 256 [211 Cal.Rptr. 325], explaining the *Killian* test for evaluating the legal effect of note destruction. Under *Killian* the court must make findings on three points: " '(1) whether the notes were made for the purpose of transferring the data, (2) whether the agent acted in good faith in destroying the notes, and (3) whether the agent acted in accordance with the normal procedure of the governmental unit in so destroying the notes. The [Supreme] [C]ourt held the absence of at least one of those elements to be a necessary, but not a sufficient, condition for a new trial. In order to obtain that remedy, the defendant must also overcome the doctrine of harmless error and demonstrate that the particular destruction of evidence resulted in *actual harm* to the defense.' (Note, *The Right to Independent Testing: A New Hitch in the Preservation of Evidence Doctrine* (1975) 75 Colum. L.Rev. 1355, 1357, fns. omitted.)" (*People v. Tierce,* at p. 264.)

Justice Eagleson went on to explain the substantial burden a defendant must carry on appeal. "As we read *Killian[, supra,* 368 U.S. 231] . . . there is no deprivation of a federal due process right if destruction of the original notes complies with the tripartite test of *Killian.* Above and beyond that, with respect to the issue of 'constitutional materiality,' *Trombetta* places the burden on the defendant to show that the 'evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain

comparable evidence by other reasonably available means.' ([*California v.*] *Trombetta, supra,* 467 U.S. at p. 489.)" (*Angeles, supra,* 172 Cal.App.3d at p. 1214.)

Under these standards defendant's challenge here fails. Officer Lisa Kleinheinz had interviewed Priscilla and witness Rosiceli Villarreal. She took notes on a small pad while doing so. Two or three hours later, she used the information from those "little jotted notes" to refresh her recollection when she wrote her report and summarized what witnesses had told her. It is standard procedure to destroy notes after preparing a written report. Officer Kleinheinz's report encompassed everything that was in her notes. Officer Tim Murphy spoke to Priscilla, took notes, and put the noted information in his report. Everything in the notes was included in his report. He confirmed that it is standard procedure to destroy notes after the completion of a report. The general custom and practice, as well as the particular procedures followed by these two officers was inquired into during both direct and cross-examination. The uncontradicted testimony establishes that the requirements of *Killian, supra,* 368 U.S. 231, *Angeles, supra,* 172 Cal.App.3d 1203, and their progeny were met.

■ The notes were made by the officers to assist them in the accurate preparation of their official reports. The notes were subsequently destroyed in accordance with departmental policy. The destruction was done in good faith, which the *Angeles* court described in this context as: "the absence of malice and absence of design to seek an unconscionable advantage over the defendant." (*Angeles, supra,* 172 Cal.App.3d at p. 1214.) The notes were destroyed before any charges were filed against defendant and no exculpatory value was apparent before their destruction.

Defendant notes that the 1990 enactment of Proposition 115 imposed a prosecutorial duty to disclose "[r]elevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial . . . ." (§ 1054.1, subd. (f).) He goes on to argue that this enactment requires law enforcement officers to retain all investigatory notes. His position is not supported by applicable authority.

■ Nothing in the statutes expressly requires the preservation of interview notes before a criminal complaint has been filed. Section 1054.1 requires the prosecutor to disclose material or information only "if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it

to be in the possession of the investigating agencies . . . ." This limitation, framed in the present tense, is inconsistent with defendant's view that the police must preserve investigatory notes before a complaint has been filed. Additionally, there is no support for such a requirement in the Proposition 115 ballot pamphlet. (See 81 Ops.Cal.Atty.Gen. 397 (1998).) Proposition 115 expressly precludes us from "broadening the scope of discovery beyond that provided in the chapter or other express statutory provisions, or as mandated by the federal Constitution." (*People v. Tillis* (1998) 18 Cal.4th 284, 294 [75 Cal.Rptr.2d 447, 956 P.2d 409]; § 1054, subd. (e).[3]) In the absence of an express statutory requirement or constitutional mandate that police retain their investigatory notes before a criminal complaint is filed, we will not create one.[4]

*Thompson v. Superior Court* (1997) 53 Cal.App.4th 480 [61 Cal.Rptr.2d 785], on which defendant relies, does not hold to the contrary. There, defense counsel disclosed witness interview reports to the prosecution. The raw notes upon which the reports were based had been preserved but counsel refused to divulge them. The *Thompson* court held the notes were discoverable.[5] (*Id.* at pp. 485–487.) However, the court referred to settled law that notes need not be preserved before entry of a discovery order. (*Id.* at p. 485, fn. 3.)

### D. Sentencing Error[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. The Petiton For Writ of Habeas Corpus[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] In relevant part, section 1054 states: "This chapter shall be interpreted to give effect to all of the following purposes . . . (e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."

[4] Our analysis is consistent with the Attorney General's view that Proposition 115 did not change the rule as articulated in *In re Gary G.* (1981) 115 Cal.App.3d 629 [171 Cal.Rptr. 531], and *People v. Dickerson* (1969) 270 Cal.App.2d 352 [75 Cal.Rptr. 828]. (81 Ops.Cal.Atty.Gen. 397 (1998).)

[5] The notes did not involve attorney work product. (*Thompson v. Superior Court, supra,* 53 Cal.App.4th at p. 482.)

[*]See footnote, *ante*, page 1049.

## DISPOSITION

The judgment is affirmed. The petition for habeas corpus is denied.

Parrilli, J., and Pollak, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 15, 2006, S140262. George, C. J., and Corrigan, J., did not participate therein.