[Crim. No. 40962. Second Dist., Div. One. Sept. 29, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH LANIER BLACKBURN, Defendant and Appellant.

COUNSEL

J. Richard Eversman, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DALSIMER, J.**—Following a jury trial, appellant suffered a conviction of multiple counts in the information alleging that he had committed various serious felonies. After denial of his motion for new trial, probation was denied and appellant was sentenced to spend in excess of 18 years in the state penitentiary. Due to egregious error by the trial court, we must reverse and remand the matter for a new trial.

Appellant appeared at trial in propria persona. Late in the afternoon on the seventh day of trial, appellant called as a defense witness Mr. Mewborn, his alleged partner in the crimes with which he had been charged. When Mr. Mewborn attempted to exercise his right not to testify by virtue of the Fifth Amendment to the United States Constitution, the court ruled that he had no testimonial privilege and directed the witness to answer. A few moments later, the court recessed the trial until the following morning.

At 9:55 the following morning, Mr. Roger Stanton appeared, identified himself as a deputy public defender, and informed the court that he was representing Mr. Mewborn. On behalf of Mr. Mewborn, counsel renewed the claim of privilege against giving testimony that might tend to incriminate that witness. After a brief discussion, the court agreed that Mr. Mewborn indeed had a right to assert the privilege and excused the witness.

Thereafter the court instructed that appellant's witnesses be brought into court. Upon the court's being advised that there was no one in the hallway, appellant stated that he had asked his family to tell his witnesses to be present in court after 1:30 p.m. He explained that he had expected Mr. Mewborn to be on the witness stand until at least noon. The court thereupon instructed appellant to make a telephone call to find out whether the witnesses had left home, and appellant did so. After appellant finished the telephone call, the court inquired, "Didn't I tell you to have your witnesses in this morning at nine o'clock?" Appellant responded, "I did have my witness here at nine o'clock." The court then stated that appellant had been instructed to have all of his witnesses in court at nine o'clock. Appellant replied, "You told me to tell my *witness*." (Italics supplied.) The court then stated that it had expressly instructed appellant to have his witnesses there at 9 a.m. and had made a note of it. The reporter's

transcript of the previous day's proceedings, however, does not reflect the giving of any admonition by the judge concerning appellant's having witnesses present. The court several times asked appellant if he had heard the court tell him to have all of the witnesses present at 9 a.m., but appellant failed to answer the court's questions, stating that his witness was present at 9 a.m.

The court then said, ". . . I'm going to rest for you." Appellant protested that he had not yet had time to listen to certain tapes.[1] The following colloquy then occurred: "THE COURT: I'm sorry. I told you to bring those people in here this morning. So, that means we are going to fool around all day long trying to find witnesses. [¶] THE DEFENDANT: We don't have to fool around all day long to find witnesses. I am supposed to call back in a little while. They are doing exactly what they were told to do. [¶] THE COURT: It's up to you to tell them to get here this morning at nine o'clock. [¶] THE DEFENDANT: I heard the P.D. tell [Mr. Mewborn] what to say. They promised him some time so he wouldn't. [¶] THE COURT: That is not important. [¶] THE DEFENDANT: It is important to my defense. [¶] THE COURT: I'll rest for you. I'm not going to argue with you. [¶] THE DEFENDANT: I am supposed to call back. Now, what—[¶] THE COURT: If you can get them here in the first few minutes. [¶] THE DEFENDANT: Well, I have to wait until he calls. You told me to hang up the phone. I'm doing what the court asked. I'm trying to find out if Criminalist Wasserman is coming. [¶] THE COURT: I'm just trying to be lenient with you. [¶] THE DEFENDANT: Yes. I know. I see. [¶] THE COURT: All right. Defendant rests. [¶] THE DEFENDANT: I have not rested. Let the record show. The court has rested. [¶] Has the court found Criminalist Wasserman? That's who I had asked for yesterday, for the last three days. [¶] THE COURT: You have any rebuttal? [¶] MR. JENKINS [the prosecutor]: No, Your Honor. People have no rebuttal."

After the People's argument but before appellant made his closing argument, the prosecutor asked the court to inquire whether or not appellant had intended to testify in his case. Before the court could put the inquiry, appellant volunteered, "I was going to testify." The court then stated, "Oh, naturally, he is going to say that at this time. What did you expect?" Appellant responded, "I was going to testify. I had two more witnesses, and three witnesses to go."

■ The trial judge has the duty of controlling the proceedings during the trial and may limit introduction of evidence and argument of counsel. (Pen. Code, § 1044.) In exercising that control, however, the judge has a duty to be impartial and to make certain that the defendant in a criminal case is afforded a fair trial. The Supreme Court said in the leading case of *People* v. *Mahoney* (1927) 201 Cal. 618 [258 P. 607], " 'Every defendant [charged with a criminal

---

[1] It appears that appellant was referring to tapes that he received from the prosecution containing conversations to which appellant was a party.

offense] is entitled to a fair trial on the facts and not a trial on the temper or whimsies of the judge who sits in his case.'" (*Id.*, at p. 626.)

We have not discovered, nor have counsel cited, any place in the record where it appears that appellant was delaying the trial or being otherwise dilatory. Furthermore, it does not appear that appellant had at any other time failed to have witnesses present at the appointed hour. The record indicates that the appellant could reasonably anticipate that the testimony of Mr. Mewborn would have occupied the morning session had not that witness been permitted to renew and have granted his previously denied attempt to assert his privilege against self-incrimination. The record certainly does not establish justification for the trial court to terminate appellant's attempted defense without affording him the opportunity to call the witnesses that he indicated to the court he wished to call.

When the appellant informed the court that he had himself wished to give testimony and still protested the fact that the case had been rested without his consent, he was in effect moving to reopen. It was not too late at that time for the court to permit him to reopen. In *People* v. *Newton* (1970) 8 Cal.App.3d 359, 381-384 [87 Cal.Rptr. 394], it was held to be error for the trial judge to refuse to reopen to allow the defense to correct a pretrial transcript. Likewise, in *People* v. *Frohner* (1976) 65 Cal.App.3d 94, 109-111 [135 Cal.Rptr. 153], it was held to be prejudicial error for a trial judge to refuse to reopen even after the jury had begun deliberation because at that time the defendant produced a witness he had theretofore been unable to present. The court found that the testimony might well have been decisive one way or another. In *Frohner* the court observed, "We recognize also that the trial court may have suspected that all defense counsel wanted was reversible error. If so, granting leave to reopen would have called his bluff. All concerned would have known very quickly whether defendant's professed desired to have Covert as a witness was based on a hunch that Covert would never appear or on the hope that Covert would tell the truth, and that the truth would benefit defendant." (*Id.*, at p. 110.)

As Justice Oliver Wendell Holmes observed, "Whatever disagreement there may be as to the scope of the phrase 'due process of law,' there can be no doubt that it embraces the fundamental conception of a fair trial, with opportunity to be heard." (*Frank* v. *Mangum* (1915) 237 U.S. 309, 347 [59 L.Ed. 969, 988, 35 S.Ct. 582] (dis. opn.).)

Appellant makes other claims of error on the part of the trial court and the prosecuting attorney. We have not closely scrutinized these contentions because they are of such a nature that they will not likely be repeated upon the retrial of this case. As the trial judge manifestly abused his discretion in

not permitting the appellant fully to present his case, the judgment is reversed. A new trial is ordered.

Spencer, P. J., and Soven, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.