[No. H000716. Sixth Dist. July 14, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST JOSEPH GARCIA, Defendant and Appellant.

336

338

---

**COUNSEL**

Nancy Myers, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward P. O'Brien, Assistant Attorney General, and Joyce E. Hee, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BRAUER, J.**—A jury found appellant Ernest Joseph Garcia guilty of the crimes of (1) burglary of an inhabited dwelling, and (2) being a convicted felon in possession of a concealable firearm. (Pen. Code, §§ 459, 460, 12021.) The jury also found it true that Garcia previously had been convicted of (3) a "residential burglary," and (4) possession of heroin. (Pen. Code, §§ 459, 460; Health & Saf. Code, § 11350.) Garcia was sentenced to a term of twelve years and eight months in the state prison. (Pen. Code, §§ 461, 667, 667.5.) He appeals from the judgment of conviction. (Pen. Code, § 1237, subd. (a).)

On appeal Garcia points to four alleged errors which, he contends, compel a reversal of the judgment. Specifically, Garcia claims:

1. The trial court erred (a) in rejecting his offer to stipulate to the fact of the previous burglary conviction, and (b) in allowing the prosecutor to present evidence of the burglary conviction (instead of the narcotics conviction) as an element of the felon-in-possession charge;

2. The court erred in refusing to admit certain fingerprint cards in evidence;

3. The court erred in denying his "Hitch" motion (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]), which was based upon an officer's loss of handwritten notes; and

4. The court erred in imposing the upper term on the burglary count, because there was no evidence that Garcia was armed with a weapon in the commission of the burglary.

Upon a review of the record we find no reversible error, and we therefore affirm the judgment.

### I. BASIC BACKGROUND

About 1:10 a.m. on December 26, 1984, Surendra Amin was awakened by strange noises in his house. At first he thought that his children were

raiding the refrigerator, but he found all of them asleep. Amin shouted, "Who is it," and then he heard someone running and the front door closing. Amin opened the door and observed, from a distance of 20-25 feet, a man running down the driveway. The man was wearing a distinctive long-sleeve shirt with horizontal stripes in alternating colors of white and maroon. Amin chased the man to a nearby intersection and then lost sight of him.

While the chase was in progress Amin's daughter called the police. The police found appellant Garcia, wearing the distinctive shirt inside out, about 75 yards away from Amin's house. Two officers detained Garcia while a third officer collected Amin and brought him to the scene. Amin identified Garcia as the man he had been chasing. Garcia was placed under arrest and transported to the police station. There the police searched him and found 34 Winchester .22 caliber bullets in the pocket of his shirt. Amin himself owned no bullets.

Investigation revealed that Amin's garage had been broken into, and that his kitchen, right next to the garage, had been entered. Amin's power tools were stacked in the center of the garage. Near the door leading into the house was an empty box for .22 caliber Winchester bullets. Scattered around the garage floor were twelve .22 caliber Winchester bullets.

Outside the garage, near the garage door, rested a set of tire-changing tools and a flashlight. On a low wall near the tools lay a .22 caliber handgun, with its safety mechanism off, containing one round in its chamber and six rounds in its clip. The gun could be fired immediately. Amin did not own the gun.

The police made an effort to secure fingerprint evidence from the garage, but they obtained only smudges.

Shortly after the arrest Officer Charles Burde interviewed Garcia at the police station. The tape recorders in the interview room were broken, and so the interview was not recorded. Burde took notes of the interview, and he described the notes as follows: "They were very short scratches, little notes of the important things as I saw them. And the things that I saw as important were only about four or five of them." Within a matter of hours Burde dictated a formal report based in part upon his handwritten "scratches." The formal report contained everything that Burde had written. According to his best recollection, Burde put his handwritten notes into the case file. But at the time of trial the notes could not be found.

Before the instant offense Garcia had been convicted of (1) possession of heroin in 1977, and (2) burglary of a residence in 1981. In 1984 Garcia was still on parole.

## II. The Amended Information and the Motions In Limine

In superior court Garcia initially was charged in three counts, as follows: (1) burglary of an inhabited dwelling, (2) burglary of a Toyota truck, and (3) possession of a concealable firearm by an ex-felon. In support of the third count the original information alleged that Garcia had previously been convicted of a residential burglary and of possession of heroin. The information also alleged both priors as sentence enhancements, along with a third prior of assault upon a peace officer.

Shortly before trial the prosecution presented an amended information "to correct priors." The original three counts remained the same; the enhancement allegation relating to assault upon a peace officer was deleted; and the enhancement relating to possession of heroin was elevated to a "prison prior" within the meaning of Penal Code section 667.5.[1]

Defense counsel protested that the amendment was tardy, but the trial court nevertheless accepted it. (Garcia pled not guilty to the amended information and denied each of the alleged priors. Defense counsel then moved to sever count three (i.e., the "ex-con-in-possession" count). The trial court denied the motion. The district attorney moved to dismiss count two (i.e., the alleged burglary of a Toyota truck) because an essential witness could not be found. That motion was granted. The result was an amended information which alleged (1) in count one, burglary of an inhabited dwelling, (2) in count two, possession of a concealable firearm by an ex-felon (further alleging previous convictions of residential burglary and possession of heroin), and (3) both prior convictions as enhancements. At that point a jury was chosen and sworn.

Then defense counsel, outside the presence of the jury, embarked upon a series of motions *in limine*. Among other things, counsel moved (a) for the admission of certain fingerprint cards in evidence,[2] and (b) for the exclusion of Officer Burde's testimony because his handwritten notes of his interview with Garcia had been lost. Both of those motions were denied, and we deal with those rulings in separate parts of our opinion, *post*.

██ While the *in limine* motions were in progress the district attorney moved to delete the allegation of the prior heroin conviction from

---

[1] The residential burglary prior was alleged as a five-year enhancement under Penal Code sections 667 and 1192.7. In the amended information the possession-of-heroin prior was alleged as a one-year enhancement under Penal Code section 667.5.

[2] Technically this was not a true motion *in limine*. It began as part of a discovery motion, when defense counsel asked to be allowed to examine the fingerprint cards.

count two of the amended information.[3] Defense counsel objected[4] and offered to stipulate to the existence of the prior convictions. He further urged the court to compel the district attorney to accept the stipulation.

The trial court, after pondering the matter overnight, concluded that because of Proposition 8 (i.e., Cal. Const., art. I, § 28, subd. (f))[5] it had no discretion to insist that the district attorney allege and prove the heroin prior instead of the burglary prior. The court further ruled that it had no discretion to insist that the district attorney accept defense counsel's stipulation.

As a result the amended information in its final form accused Garcia (1) in count one, of burglary of an inhabited dwelling, and (2) in count two, of being a previously convicted residential burglar in possession of a concealable firearm. The alleged enhancements remained the same. In this posture the case went to trial.

### III. PROOF OF THE PRIOR BURGLARY AS AN ELEMENT OF COUNT TWO

A. *Effect of Proposition 8*

In *People* v. *Hall, supra,* 28 Cal.3d 143 the California Supreme Court held "that in a prosecution for violating [Penal Code] section 12021 the element of a prior conviction of a felony may not be given to a jury if the accused stipulates to it. This rule applies unless the state can clearly demonstrate that its application will *legitimately* impair the prosecutor's case or preclude presentation of alternate theories of guilt." (*Id.,* at p. 156, italics in original, fn. omitted.) The court reasoned, among other things, that once an accused admits the prior felony conviction, there is no disputed issue of fact on that point within the meaning of Evidence Code section 210,[6] and so "proof of the nature of the felony was irrelevant and therefore

---

[3]The district attorney based his motion on *People* v. *Patino* (1984) 160 Cal.App.3d 986 [206 Cal.Rptr. 762], which holds that when a defendant is charged with being an ex-felon in possession of a concealable firearm (Pen. Code, § 12021), the prosecution may prove only *one* prior felony as an element of the offense (*id.,* at p. 994).

[4]Defense counsel based his objection upon Evidence Code section 352, *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826], and *People* v. *Sherren* (1979) 89 Cal.App.3d 752 [152 Cal.Rptr. 828].

[5]Article I, section 28, subdivision (f) of the California Constitution reads as follows: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

[6]Evidence Code section 210 provides: "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." Section 350 of the same code reads: "No evidence is admissible except relevant evidence."

inadmissible." (*Id.*, at pp. 151-153; see also *People* v. *Sherren, supra,* 89 Cal.App.3d 752, 758-760.)

Voter approval of Proposition 8 in 1982 added section 28 to article I of the California Constitution. Subdivision (f) of section 28 deals with the use of prior felony convictions. The second sentence of subdivision (f) reads thus: "When a prior felony conviction is an element of any felony offense, *it shall be proven* to the trier of fact *in open court.*" (Italics added.) As of this writing the California Supreme Court has not squarely addressed the meaning of that second sentence.[7] But two Courts of Appeal have held that subdivision (f) was intended by the voters to overturn the Supreme Court's opinion in *People* v. *Hall, supra,* 28 Cal.3d 143, 151-153. (*People* v. *Ancira* (1985) 164 Cal.App.3d 378, 381 [210 Cal.Rptr. 527], hg. den. (1985); *People* v. *Callegri* (1984) 154 Cal.App.3d 856, 866-867 [202 Cal.Rptr. 109].) We agree. ■ When the voters demanded that a prior felony conviction be proven in open court as an element of a presently charged offense, they in effect decreed that the *nature* of an accused's prior felony is *relevant evidence* of substantial probative value and that the accused may not, by stipulation or otherwise, prevent the introduction of such evidence. Evidently it makes some difference to the voters whether an accused has previously been convicted, say, of murder (Pen. Code, §§ 187, 190) or of conspiring to import canaries illegally (18 U.S.C. §§ 42, 371). In any event it appears that by constitutional amendment they determined that prior felony convictions are relevant as a matter of law under Evidence Code section 210; and in so doing they annihilated the premise upon which the California Supreme Court based its opinion in *Hall*.

Therefore we conclude that in this case the trial court committed no error in refusing to compel the district attorney to accept defense counsel's stipulation regarding Garcia's prior convictions. (*People* v. *Callegri, supra,* 154 Cal.App.3d at p. 867.)

More intricate is the question whether the trial court should have compelled the district attorney to plead and prove the possession-of-heroin prior rather than the burglary prior. As the trial court correctly pointed out, if the burglary prior had been the only one available to the prosecution, the

---

[7]In *People* v. *Castro, supra,* 38 Cal.3d 301, 306-313 the court dealt with the *first* sentence of subdivision (f), relating to the use of prior felony convictions for purposes of impeachment or sentence enhancement. (See fn. 5, *ante.*) There the court held that the constitutional amendment did not eliminate a trial court's discretion to exclude evidence of certain kinds of priors. (*Id.*, at pp. 313-317.) The court reasoned that for impeachment purposes only prior convictions involving moral turpitude were relevant to the issue of the credibility of a witness. (*Ibid.*) But the court did not address the precise issue which confronts us here, viz., use of a prior felony conviction to prove an element of a present offense.

question would have been moot; the constitutional amendment would allow the district attorney to prove that prior in open court. But here there were two available priors, one similar to the crime alleged in count one and the other quite different.

▮▮ ▮▮ "The district attorney's function is quasi-judicial in nature [citation], and . . . he is vested with discretionary power in determining whether to prosecute in any particular case. An unbroken line of cases in California has recognized this discretion and its insulation from control by the courts . . . ." (*People* v. *Municipal Court (Pellegrino)* (1972) 27 Cal.App.3d 193, 207 [103 Cal.Rptr. 645, 66 A.L.R.3d 717].) Generally speaking, "[a] prosecutor is not subject to judicial supervision in determining what charges to bring and how to draft accusatory pleadings."[8] (*People* v. *Adams* (1974) 43 Cal.App.3d 697, 708 [117 Cal.Rptr. 905].) Consequently as a matter of *pleading* the district attorney could allege what he chose; and in this case the superior court committed no error in allowing him to delete the allegation of the possession-of-heroin prior from count two of the amended information. (Cf. Pen. Code, § 969a.)

But a prosecutor may not control courtroom proceedings simply by amending an accusatory pleading at will to fit a given situation. A superior court is not a prosecutor's puppet; it has statutory resources of its own which remain quite unaffected by the advent of Proposition 8. For example, Penal Code section 954 specifically authorizes a superior court, "in the interests of justice and for good cause shown," to "order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately." And Penal Code section 1094 says: "When the state of the pleadings requires it, *or in any other case, for good reasons, and in the sound discretion of the Court,* the order [of trial proceedings] described in the last section [i.e., Pen. Code, § 1093] may be departed from." (Italics added.) "'[W]hen the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility.' [Citation.] Thereupon the discretion of the executive—as that of any party to the proceeding—becomes subject to the supervision of the trial court." (*People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255, 265 [137 Cal.Rptr. 476, 561 P.2d 1164], quoting from *People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 66 [113 Cal.Rptr. 21, 520 P.2d 405].) In short, the district attorney may accuse as he pleases, but the trial judge controls the flow of evidence in the courtroom.

---

[8]This rule is not absolute. In some instances overcharging may result in a dismissal. See, e.g., *Barajas* v. *Superior Court* (1983) 149 Cal.App.3d 30, 35 [196 Cal.Rptr. 599], and *Williams* v. *Superior Court* (1973) 30 Cal.App.3d 8, 12-15 [106 Cal.Rptr. 89]. No issue of prosecutorial vindictiveness has been raised in the course of this appeal.

■ At this point we recall a certain passage written by the Chief Justice of the United States at a time when he was a judge of the Court of Appeals. "A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. *Where multiple convictions of various kinds can be shown,* strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" (*Gordon* v. *United States* (D.C. Cir. 1967) 383 F.2d 936, 940, italics added, fn. omitted.) We fully recognize that the Chief Justice there was writing about the problem of using prior convictions for purposes of *impeachment*. But we think his reasoning is equally apposite where, as in this case, the issue is use of a prior conviction to prove an element of a presently charged offense and "multiple convictions of various kinds can be shown." As one Court of Appeal has suggested, "Proposition 8 does not provide for the *unlimited* use of prior felony convictions to prove an element of the crime and . . . such a construction would create undue prejudice and amount to 'overkill.'" (*People* v. *Patino, supra,* 160 Cal.App.3d 986, 994, italics added.) To prove an "ex-con-in-possession" charge, a district attorney need only establish *one* prior felony conviction. (*Ibid.*)

Here the district attorney freely admitted that evidence of the burglary prior would be more prejudicial to Garcia than evidence of the narcotics prior. He said: "Certainly, however, it's prejudicial to him, more prejudicial to have the burglary than the 11350, but I don't think that's anything that he is in a position to control nor your honor, with all due respect, do I think you are because I think that's totally within my province as the district attorney." But while the trial court could not have compelled the prosecutor to select the least provocative prior, it should have exercised its discretion under Penal Code section 954 to order counts one and two of the amended information to be tried separately before the same jury. ■ [¶] The trial judge has the duty of controlling the proceedings during the trial and may limit introduction of evidence and argument of counsel. (Pen. Code, § 1044.) In exercising that control, however, the judge has a duty to be impartial and to make certain that the defendant in a criminal case is afforded a fair trial." (*People* v. *Blackburn* (1982) 139 Cal.App.3d 761, 764 [189 Cal.Rptr. 50].) ■ As we noted in part II, *ante,* Garcia's counsel specifically moved to sever the "ex-con-in-possession" count. Had the court done so, the sequence of events would have been this: (1) count one (burglary of an inhabited dwelling) would have been tried first, without any mention of Garcia's prior burglary conviction; (2) at the close of the evidence, and properly instructed, the jury would have deliberated upon the sole question of whether Garcia burglarized Amin's house; (3) irrespective of the jury's verdict on count one, the trial would then have proceeded on count two (the

"ex-con-in-possession" count), and (4) there free use could have been made of Garcia's previous burglary conviction.[9] Such a procedure would have (1) fully complied with the constitutional mandate that the prior burglary be proven in open court, and (2) dissipated any prejudice, real or imagined, claimed by the defendant.[10] And the superior court would have retained control.

Unhappily the rosy scenario we have just described did not play. Therefore we examine the question of whether the error warrants a reversal of Garcia's conviction.

## B. *The Question of Prejudice*

In his opening statement the prosecutor announced that he would submit "documentary evidence . . . that Mr. Garcia has suffered a prior conviction for burglary" in order to prove count two. In the course of the trial on counts one and two, he introduced in evidence exhibit 12, which he described as a certified copy of Garcia's prior burglary conviction. In opening argument he told the jury: "The prior shows in 1981, January 15th, 1981, Mr. Garcia, was convicted of a felony burglary. What does that mean? That means he can't have a concealable firearm." While instructing the jury the court read the information, and thereby alluded to the prior burglary.[11] Defense counsel did not mention the prior at all.

But during the prosecutor's opening argument to the jury the trial judge drafted an instruction of his own. During a recess he read the instruction to counsel and inquired if either had any objection to it. Both counsel approved it. Thereafter the court read the instruction to the jury, as follows: "You are admonished that the fact, if you find it to be fact, that the defendant has previously been convicted of a residential burglary in this county is no

---

[9] Of course, any benefits to defendant derived from utilizing this procedure would have been dissipated had Garcia elected to take the witness stand during the trial of the burglary charge. In that instance he could have been impeached by the prior burglary conviction, under *People* v. *Castro, supra,* 38 Cal.3d 301, 313-317.

[10] Since Garcia denied both priors, the trial was in fact bifurcated. First the jury deliberated on counts one and two, and found Garcia guilty of both. Thereafter additional evidence was presented to prove the prior convictions. The jury again deliberated and found both priors true. (See *People* v. *Tipton* (1984) 160 Cal.App.3d 853, 855-856 [206 Cal.Rptr. 821] and *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 655-656 [174 Cal.Rptr. 191].)

[11] "Count two, that in the County of Santa Clara, State of California, on or about the 26th day of December, 1984, the said defendant, Ernest Joseph Garcia, committed a felony, to wit: a violation of California Penal Code section 12021(a), possession of a concealable firearm by a specified person, in that the said defendant having been convicted of felonies, to wit: burglary, a violation of section 459 of the Penal Code of the State of California, did have in his possession and in his custody and control a firearm, to wit: a pistol capable of being concealed upon the person. That's convicted of a felony, not felonies."

evidence whatsoever that he committed a residential burglary as charged in count one of the information. The only relevance of the defendant's alleged prior conviction of residential burglary is as an element of count two which accuses the defendant of being a convicted felon in possession of a concealable firearm."

We think this admonitory instruction sufficiently allayed any prejudice that may have accrued during the repeated references to the prior burglary. The prior was not exhibited as a "similar"—none of the circumstances surrounding its commission were given to the jury. The prosecutor, apparently aware of the prior's prejudicial nature, did not take undue advantage of it. Garcia's parole status was never mentioned. The prosecution's case on count one was strong: a burglary undoubtedly occurred; the victim chased the burglar; Garcia was found nearby wearing the distinctive striped shirt; the victim identified Garcia as the man he chased; and Garcia just happened to have 34 Winchester .22 caliber bullets in his shirt pocket identical to others found scattered in the garage.

Upon a review of the entire record we conclude that it is not reasonably probable that Garcia would have obtained a more favorable result as to count one in the absence of error. (Cal. Const., art. VI, § 13; *People v. Castro, supra,* 38 Cal.3d at p. 319; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## IV. Exclusion of Fingerprint Cards

Before the actual trial testimony began, a latent fingerprint examiner was called to the witness stand. He brought with him 13 "latent print cards" containing fingerprints lifted at the scene of the Amin burglary. He testified that the latent prints had "no value for comparison purposes. . . . I examined these and determined that there wasn't sufficient quality or quantity of points and/or characteristics to make a determination on whether or not this latent was made by another person." He further stated, "I saw nothing in my opinion that would be able to allow me to either identify or eliminate anybody." Garcia nevertheless moved that the fingerprint cards be allowed in evidence at trial. The trial court ruled: "I find that any testimony concerning fingerprints would not be relevant because it could not aid the trier of fact on any disputed issue in the case. If relevant, I find that the presentation of the testimony would be unduly time consuming and would run the risk of misleading or confusing the jury. And therefore, the evidence will be inadmissible pursuant to Evidence Code section 352, having weighed the probative value against those other factors."

On appeal Garcia contends that the trial court erred in its ruling. His position is this: "The excluded evidence here was relevant to the critical

issue in the trial, i.e., the presence in or absence of Appellant from the residence. The fact that the fingerprint evidence obtained by the police did *not* place him in the house tended to disprove the prosecution's contention that he was in the house." (Italics in original.) The evidence "did not point the finger at Appellant but, instead, tended to prove Appellant's innocence."

This argument is just plain wrong. An expert testified that the fingerprint lifts "had no value for comparison purposes." He could find nothing which would allow him "to either identify or eliminate anybody." If the fingerprint smudges were of no value to the expert, it is difficult to believe that they would be of any value to the average lay juror.

Evidence Code section 210 provides in part that "'Relevant evidence' means evidence . . . having any tendency *in reason* to prove or disprove any disputed fact . . . ." (Italics added.) ■ The fingerprint smudges had no tendency in reason to prove or disprove anything. Therefore the trial court's ruling was correct.

## V. Refusal to Suppress Officer Burde's Testimony

Garcia also made a motion *in limine* to suppress Officer Burde's testimony concerning his postarrest interview with Garcia on the ground that Burde's handwritten notes of the conversation had not been preserved. During the motion Officer Burde testified (1) that his handwritten notes were "very short scratches, little notes of the important things as I saw them"; (2) that his formal report, dictated within hours of the interview, contained everything that he had written down; (3) that to the best of his recollection, he put the notes with Garcia's case file; and (4) that he could not now find them. He felt the notes were "lost."

Then Garcia himself took the witness stand.[12] When asked whether Burde's formal report correctly stated what he himself had said to Burde during the interview, Garcia replied, "No, they are not." But he did not specify in what particulars the report was incorrect.

The trial court ruled: "I find that the evidence shows that the statements made by the defendant were incorporated in the formal report. The defendant's mere denial of that was unpersuasive to me and not credible to me. This officer has made no—there's been no showing that the officer made an error or acted in bad faith. And indeed there is a showing that there is a systematic procedure for preserving the notes put on a certain form three. And the officer systematically puts them in the case folder for

---

[12]This was the only time Garcia testified. He did not testify at trial.

preservation for trial . . . . Under the circumstances, the motion is denied." Garcia now claims that the denial was error, citing *People* v. *Jones* (1983) 145 Cal.App.3d 751 [193 Cal.Rptr. 663].

But the very same court that wrote the *Jones* opinion later decided that "[s]ince the *Jones* holding conflicts with the federal standards . . . that holding no longer accurately reflects the law in this state." (*People* v. *Tierce* (1985) 165 Cal.App.3d 256, 264 [211 Cal.Rptr. 325].) ■ The constitutional amendment which we already have mentioned (Cal. Const., art. I, § 28) forbids the exclusion of evidence "except to the extent that exclusion remains federally compelled." (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Angeles* (1985) 172 Cal.App.3d 1203, 1216 [218 Cal.Rptr. 756], mod. in 174 Cal.App.3d 73a.)

■ In *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528] the United States Supreme Court held: "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, . . . evidence must both possess *an exculpatory value that was apparent before the evidence was destroyed,* and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Id.,* at pp. 488-489 [81 L.Ed.2d at p. 422], italics added, fn. omitted.) Garcia did not demonstrate that Officer Burde's handwritten notes had apparent exculpatory value. He merely testified that the formal report was incorrect, which is not the same thing. Absent some showing of materiality we cannot discern that the handwritten notes might be expected to play a significant role in Garcia's defense.

Furthermore, there was no showing that the notes were actually destroyed. "The negligent loss of the notes comports with the requirement of good faith. Good faith, in this context, is the absence of malice and absence of design to seek an unconscionable advantage over the defendant. . . . The record shows only that the original notes were lost, not purposefully destroyed or secreted so as to prejudice defendant with respect to their possible content." (*People* v. *Angeles, supra,* 172 Cal.App.3d at p. 1214.)

Finally, in *Killian* v. *United States* (1961) 368 U.S. 231 [7 L.Ed.2d 256, 82 S.Ct. 302], where the government failed to produce notes made by F.B.I. agents, the United States Supreme Court held: "If the agents' notes . . . were made only for the purpose of transferring the data thereon . . ., and if, after having served that purpose, they were destroyed by the agents in good faith and in accord with their normal practice, it would be clear that their destruction did not constitute an impermissible destruction of evidence

nor deprive petitioner of any right." (*Id.*, at p. 242 [7 L.Ed.2d at p. 264].) Officer Burde testified that everything contained in his handwritten notes was incorporated into his final report. The notes obviously were used to transfer data, and they served that purpose. Therefore even if the notes had actually been destroyed, Garcia would not have been deprived of any right.

The trial court's ruling was correct.

## VI. Imposition of Upper Term

The trial court imposed the upper term of six years on the burglary count. One of the factors the court considered was "the fact that at the time of the offense the defendant was armed with a weapon . . . ." The court said "I find that that factor outweighs any factors in mitigation." Garcia now contends that imposition of the upper term was error, because there was no evidence showing that he was armed during the commission of the burglary, i.e., when he went inside the house.

In the California Rules of Court, rule 421(a)(2) provides that if "[t]he defendant was armed with or used a weapon at the time of the commission of the crime," that fact is an aggravating circumstance whether it is charged or not. We know of no case which has construed this rule to mean that a burglar must have a weapon on his person in order to be "armed . . . at the time of the commission of the crime." The fact that a burglar may temporarily divest himself of a weapon, leaving it ready to hand, does not make him any less "armed." "A person is 'armed' with a deadly weapon when he simply carries a weapon *or has it available* for use in either offense or defense." (*People* v. *Stiltner* (1982) 132 Cal.App.3d 216, 230 [182 Cal.Rptr. 790], italics added; *People* v. *Reaves* (1974) 42 Cal.App.3d 852, 856-857 [117 Cal.Rptr. 163].)

 "The desire of the Legislature to prevent death and injury as a result of the involvement of firearms in the commission of crime is manifest from the various provisions for increased punishment for crimes where firearms are in some way involved. The underlying intent of the Legislature is to deter persons from creating *a potential for death or injury resulting from the very presence of a firearm at the scene of the crime*. Thus there is aggravated punishment for a person who is armed with a deadly weapon even though no use is made of the weapon." (*People* v. *Reaves, supra,* 42 Cal.App.3d at pp. 856, italics added.)

In this case the jury found that Garcia was in possession of a concealable firearm. From the evidence it was readily apparent that he had it available

for use at the scene of the burglary. He left it behind in flight. Only then did he become disarmed.

## VII. DISPOSITION

The judgment is affirmed.

Agliano, P. J., and Phillips, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.