Filed 11/24/14  P. v. Read CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHARLES DELANO READ,<br><br>        Defendant and Appellant. | A138874<br><br>(San Mateo County<br>Super. Ct. No. SC035413A) |

Defendant Charles Delano Read, serving multiple indeterminate life sentences, moved the trial court for a reduced sentence under the Three Strikes Reform Act of 2012. The trial court concluded defendant was ineligible because he had been "armed" during commission of his third strike offenses—offenses for possession of drugs and firearms—even though the prosecution never pleaded or proved defendant was armed and never sought an "arming" enhancement.  As there is no pleading or proof requirement, and as the evidence from the record of defendant's conviction supports the finding defendant was armed under the resentencing statute, we affirm.

**BACKGROUND**

We set forth the facts underlying defendant's third-strike convictions in our opinion *People v. Read* (Oct. 23, 1997, A074751 [nonpub. opn.]).  Both defendant and the Attorney General adopt this version of events, and we recite here pertinent portions thereof.  (See *People v. Trujillo* (2006) 40 Cal.4th 165, 180, citing *People v. Woodell* (1998) 17 Cal.4th 448, 457; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1030 (*Osuna*).)

1

"On October 5, 1994, at approximately 2:30 p.m., police officers who were conducting surveillance outside of appellant's residence, arrested appellant on an outstanding misdemeanor warrant for driving without a license. . . . [¶] San Francisco Police Sergeant Kern conducted a search incident to arrest. He found a bindle containing .58 grams of methapmhetamine in a pocket of appellant's jeans. He also found a syringe in appellant's left front pocket. . . . . The officers also searched the Cadillac appellant had been driving, which belonged to his girlfriend, Diane Arena. They found a syringe loaded with amber liquid on the seat of the car. . . .

"Diane Arena emerged from the house to find out what was going on. Sergeant Flores informed her that appellant was under arrest. He asked if there were any weapons in the house, and Arena said there were. Flores obtained her consent to search the house.

"In the only bedroom, Flores found a fully loaded 7.65 millimeter Pietro Baretta semi-automatic pistol, and a loaded Smith and Wesson .38 revolver. He also found three scales, one with drug residue on it, and a plastic baggie containing seven syringes.

"California Department of Justice Special Agent Tanaka searched the house, and found many items associated with the manufacture of methamphetamine. Among these were a notebook found in the bedroom containing 'handwritten notes, . . . diagrams of glassware apparatus, set ups, specifically with the names of flask[s], beakers, vacuum adaptors, condenser columns, and chemical names and abbreviations.' Appellant's fingerprints were found on three of the inside pages with handwriting on them. Tanaka also found numerous items in the kitchen, including a gallon can of Acetone, a gallon of denatured alcohol, a Pyrex flask, and a large test tube which also had appellant's fingerprints on them. In the basement, Tanaka found other items including 35 empty plastic pill bottles labeled ephedrine hydrochloride, 25 milligrams, lye, sulphuric acid, and filters. Officer Chaplin found a plastic baggie containing 94.9 grams of methamphetamine that still 'appeared to be wet,' in the kitchen on top of some boxes next to the stove.

"Tanaka testified that, in his opinion, the baggie found by Chaplin was possessed for sale, based upon the quantity and the quality, as well as the other items located throughout the house. Tanaka explained that most people who possess for their own use are going to buy it, not manufacture it, and whenever he located methamphetamine that was 'wet' he inferred that it was recently manufactured, and that the next step would be to distribute or sell it. He added that the items of equipment found throughout the house were consistent with a particular method of manufacturing and processing methamphetamine, and that the methamphetamine found in the baggie was also consistent with that process. He did[ not] express an opinion whether the methamphetamine had been manufactured with the items of equipment found in the house.

"Officer Kern, who qualified as an expert in the identification and possession for sale of methamphetamine, testified . . . that the baggie found in the kitchen was possessed for sale. He based his opinion on '[t]he amount, the paraphernalia that went with it, the records, specifically the notebook that was found in the bedroom.' He had never seen such a high quantity possessed for personal use.

"Diane Arena testified under immunity, that appellant . . . had been living with her for at least two years prior to his arrest. She inherited the house and the Smith and Wesson .38 revolver from her father. She also purchased the Baretta, which she considered her personal firearm. To her knowledge they were not loaded. She had been keeping the .38 in a storage locker away from the house, but appellant took it out of storage and brought it home. Two or three months before the arrest he held the .38 and pointed it at her. She did not recall seeing him hold the Baretta, but she had shown it to him. She did not recognize the methamphetamine found in the kitchen, and she used it '[i]nfrequently.'

"In his defense, appellant testified that on the morning of his arrest, as he left the house, he found a bindle of powder on the top step of the front porch. He believed it was methamphetamine, and put it in his pocket, planning to later confront Arena with it. He had used methamphetamine the night before, but not from that bindle. He did not see the

3

baggie that the police found in the kitchen, and had not seen it anywhere in the house from midnight on the 4th of October until the arrest. He had previously been convicted of manufacturing methamphetamine and was aware of all the items of laboratory equipment found in the house. Most of these items were used for other purposes, and others were in such poor condition that '[n]obody in their right mind' would use them to manufacture methamphetamine. He was unaware that the .38 revolver and the Baretta pistol were in the house. He had told Arena that, in light of his record there could be no guns in the house, and they were supposed to be kept in a storage locker. They fought over this issue about a year before his arrest. He denied ever putting the .38 to Arena's head, but had thrown it across the room once when he found it in the house." (*People v. Read, supra*, A074751.)

Following trial, defendant was found guilty of one count of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)), one count of possessing methamphetamine with the purpose to sell it (Health & Saf. Code, § 11378) and two counts of possessing a firearm as a prior felon (former Pen. Code, § 12021.1, subd. (a), see new § 29900, subd (a)(1)).[1]

As defendant had previously been convicted of two serious or violent felonies, the trial court sentenced him under California's three strikes law and imposed a term of 109 years to life—four consecutive terms of 25 years to life (with the possibility of parole) for the four counts, plus another consecutive term of nine years for various enhancements.

This court affirmed defendant's convictions on appeal, except as to one of the weapon counts. The Attorney General conceded defendant, under the then-operative law, could not be separately convicted of two counts of weapons possession for possessing two different guns on the same date in the same place. The one count reversal reduced defendant's sentence to 84 years to life.

On December 6, 2012, defendant filed a motion for resentencing under the Three Strikes Reform Act of 2012. The trial court denied defendant's motion, finding him

---

[1] All further statutory references are to the Penal Code unless indicated.

4

ineligible for resentencing because he had been "armed" with a firearm during commission of his offenses. Defendant filed a notice of appeal. The Supreme Court has held the denial of resentencing based on ineligibility is an appealable order. (*Teal v. Superior Court* (Nov. 6, 2014, S211708) __ Cal.4th __.)

## DISCUSSION

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012 (Reform Act), which amended Penal Code sections 667 and 1170.12 and added section 1170.126. [Citation.] Under the 'Three Strikes' law (§§ 667, subds. (b)–(i), 1170.12) as it existed prior to Proposition 36, a defendant convicted of two prior serious or violent felonies was subject as a third strike offender to a sentence of 25 years to life upon conviction of *any* third felony. [Citation.] Now, under the *prospective* provisions of the Reform Act (set forth in §§ 667, 1170.12), a defendant convicted of two prior serious or violent felonies is subject to the 25-year-to-life sentence only if the current third felony is a *serious or violent* felony." (*People v. White* (2014) 223 Cal.App.4th 512, 517 (*White*).) A defendant will also be subject to the 25-year indeterminate life sentence if the "prosecution pleads and proves" certain aggravating conditions, such as "[d]uring the commission of the current [third felony] offense, the defendant . . . was armed with a firearm." (§ 667, subd. (e)(2)(C)(iii); § 1170.12, subd. (c)(2)(C)(iii).)

The Reform Act also has a retrospective component. Subject to "specified eligibility criteria and subject to certain disqualifying exceptions or exclusions, a prisoner currently serving a sentence of 25 years to life under the pre-Proposition 36 version of the Three Strikes law for a third felony conviction that was not a serious or violent felony may be eligible for resentencing as if he or she only had one prior serious or violent felony." (*White*, *supra*, 223 Cal.App.4th at p. 517; § 1170.126.) As relevant here, "[a]n inmate is eligible for resentencing if" the inmate's "current sentence was not imposed for any of the offenses appearing" in section 667, subdivision (e)(2)(C)(i) through (iii) or section 1170.12, subdivision (c)(2)(C)(i) through (iii). (§ 1170.126 subd. (e)(2).) Section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii) are,

5

as set forth above, both part of the Reform Act's forward-looking provisions and identify as disqualifying offenses those in which "[d]uring the commission of the offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§ 667, subd. (e)(2)(C)(iii); § 1170.12, subd. (c)(2)(C)(iii).)

The Attorney General contends defendant is ineligible for resentencing because he was "armed" during commission of the possession offenses. Defendant takes the contrary position, arguing he was only charged and convicted of *possession*, not of any offense or enhancement that required the prosecutor to plead or prove he was "armed." According to defendant, an inmate is only disqualified from resentencing if the disqualifying criteria was pled and proved, and that this is required as a matter of due process under the United States Constitution. Defendant further argues he was not, in any event, "armed" at the time of the offenses.

We generally review a "trial court's legal conclusions de novo and its findings of fact for substantial evidence." (*People v. Trinh* (2014) 59 Cal.4th 216, 236.) A determination of what the Three Strikes Reform Act requires is a legal question subject to de novo review. Whether evidence supports the conclusion defendant was armed, as that term is to be construed, is a question of fact we review for substantial evidence. (See *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1331 ["we hold the court's determination that the wire cutters were a deadly weapon is not supported by sufficient evidence"]; *Osuna, supra*, 225 Cal.App.4th at p. 1040 ["The record in this case amply established defendant was disqualified from resentencing as a second strike offender because he was armed with a firearm during the commission of his current offense."].)

***No Pleading and Proof Requirement***

"[W]hen an *initial* sentencing for a current offense is at issue, there is a clear statutory pleading and proof requirement with respect to factors that disqualify a defendant with two or more prior strike convictions from sentencing as a second strike offender." (*Osuna*, *supra*, 225 Cal.App.4th at p. 1033, italics added; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1058 (*Blakely*).)

6

"Fairly read, however, section 1170.126 does not impose the same requirements in connection with the procedure for determining whether an inmate already sentenced as a third strike offender is eligible for *resentencing* as a second strike offender." (*Blakely*, *supra*, 225 Cal.App.4th at p. 1058; *White*, *supra*, 223 Cal.App.4th at p. 527 ["the pleading and proof requirement plainly is a part of only the *prospective* part of the Reform Act"].) It incorporates the disqualifying factors set forth in sections 667 and 1170.12, but not those sections' pleading and proof requirements. (*Blakely*, *supra*, 225 Cal.App.4th at p. 1058; *White*, *supra*, 223 Cal.App.4th at p. 527; see also *People v. Manning* (2014) 226 Cal.App.4th 1133, 1139; *People v. Bradford, supra*, 227 Cal.App.4th at p. 1332 ["no similar language in the resentencing statute"].) As resentencing is ultimately a discretionary act of leniency to an inmate with a valid life sentence, there is no superseding constitutional requirement that the basis for the denial of leniency have been pleaded and proved. (*Blakely*, *supra*, 225 Cal.App.4th at pp. 1060, 1063 ["Like facts invoked to limit the ability to earn conduct credits, facts invoked to render an inmate ineligible for downward resentencing do not increase the penalty for a crime beyond the statutory maximum, and so need not be pled or proved."]; *Osuna*, *supra*, 225 Cal.App.4th at pp. 1039–1040.)

Since there is no pleading and proof requirement, "a trial court may deny section 1170.126 resentencing relief under the armed-with-a-firearm exclusion even if the accusatory pleading, under which the defendant was charged and convicted of possession of a firearm by a felon, did not allege he or she was armed with a firearm during the commission of that possession offense." (*White*, *supra*, 223 Cal.App.4th at p. 527; also *People v. Elder* (2014) 227 Cal.App.4th 1308, 1314–1316.) The trial court may look to uncharged conduct manifest from examining "relevant, reliable, admissible portions of the record of conviction." (*Blakely*, *supra*, 225 Cal.App.4th at pp. 1059, 1063; *Osuna*, *supra*, 225 Cal.App.4th at p. 1030 [relying on prior appellate court decision]; see also Couzens & Bigelow, The Amendment of the Three Strikes Sentencing Law (Aug. 2014) pp. 17, 32 ["Nothing requires a sentence to be imposed for a specific disqualifying factor" and "[i]t seems likely that if the entire record of conviction can be used in

7

determining the existence of a strike for an original sentencing proceeding, the same record can be used in determining whether a person qualifies for second strike sentencing under Proposition 36"], <www.courts.ca.gov/documents/Three-Strikes-Amendment-Couzens-Bigelow.pdf> [as of Nov. 24, 2014].)

***Substantial Evidence Supports Conclusion Defendant Was "Armed"***

We accordingly turn to the record in this case and to the question of whether defendant was armed, as that term is used in the Reform Act, during the commission of his "possession" offenses.

In contrast to "using" a firearm, "*arming* under the sentence enhancement statutes does not require that a defendant utilize a firearm or even carry one on the body. A defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively." (*People v. Bland* (1995) 10 Cal.4th 991, 997, 1003 (*Bland*).) We employ the same definition of armed in conjunction with the Reform Act. (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979, 992 ["In enacting Proposition 36, the voters are thus deemed to have been aware of the longstanding statutory and judicially construed definitions of 'armed with a firearm.' "].)

Defendant contends the guns found in the bedroom and the drugs found on his person and in the kitchen were so far apart spatially he could not have been "armed."

We conclude, however, this case is factually indistinguishable from *Martinez*, *supra*, 225 Cal.App.4th 979. There, law enforcement officers found the defendant in his kitchen, drug paraphernalia on his person, a bindle of heroin on the table before him, and a shotgun in one of the bedrooms and another gun in one of the closets. (*Id.* at p. 985 & fn. 2.) The defendant argued he was not armed during his heroin possession offense, for purposes of resentencing, because the gun was in a "separate room" from the heroin.[2]

---

[2] As defense counsel noted at oral argument, marijuana was also found either in the bedroom with the gun or the kitchen with the defendant. The location of the marijuana played no role in the parties' arguments or the *Martinez* court's decision regarding whether the defendant was armed in the commission of his heroin-related offense. Rather, the defendant in *Martinez* focused on the heroin, alone, and its location in a "separate room." (*Martinez*, *supra*, 225 Cal.App.4th at pp. 985–986 & fn. 2.)

8

(*Id.* at p. 986.)  While the trial court agreed with the defendant, the Court of Appeal, reviewing these undisputed facts de novo, reversed.  (*Id.* at pp. 990, 995.)  The appellate court concluded the defendant, as a matter of law, "had the firearm available for immediate offensive or defensive use."  (*Id.* at pp. 993, 995.)

*Martinez* is consistent with other California Court of Appeal cases addressing when a person is "armed."  (*People v. Vang* (2010) 184 Cal.App.4th 912, 914 [gun in locked bedroom, drugs in various unlocked closets, armed]; *People v. Wandick* (1991) 227 Cal.App.3d 918, 921 [gun in bedroom, drugs throughout house, armed]; *People v. Delgadillo* (2005) 132 Cal.App.4th 1570, 1575 (*Delgadillo*) ["[b]ecause the firearms were in defendant's bedroom along with a significant sum of money, and in close proximity to cars in which defendant and his colleagues stored lab equipment and raw material, those firearms were available to defendant to use offensively or defensively at any time during the manufacturing process"]; *People v. Bradford* (1995) 38 Cal.App.4th 1733, 1739 (*Bradford*) [guns in cabin, marijuana growing nearby in compound, armed]; *People v. Garcia* (1986) 183 Cal.App.3d 335, 340, 350–351 [burglar was "armed" during crime when he left loaded handgun on low wall outside garage before entering house through garage].)  *Martinez* is also consistent with *People v. Bland*, *supra*, 10 Cal.4th at pages 995, 998, 1000–1001, 1002–1003, which articulates the broader principle that the "armed" enhancement to drug possession applies when a firearm is in "close proximity to the illegal drugs in a place frequented by the defendant," which allows the inference the firearm was, "at some point during" the continuous period of possession, close at hand.

Defendant argues *Delgadillo* and *Bradford* are distinguishable as involving more "sophisticated" defendants and larger scale manufacturing or cultivation schemes. However, these cases do not rest their "arming" analyses on either the scope of the alleged enterprise or the fact the offense was for manufacturing instead of possession. Moreover, defendant has cited no case that concludes a defendant cannot be "armed" simply because drugs and guns are in different portions of an apartment or home. Indeed, *Martinez* involved a residence with multiple bedrooms (*Martinez*, *supra*, 225 Cal.App.4th at p. 985) while this case involved a one-bedroom abode, in which the

9

gun was accompanied by drug manufacturing paraphernalia (namely a scale) with drug residue suggesting drugs had once been present there, even if not at the time of the police search. In sum, defendant's possession of drugs not only within the house but on his person, paired with the guns and manufacturing paraphernalia in the bedroom, allowed for a reasonable inference he was present with the drugs and guns at the same time, and thus armed.

## DISPOSITION

The order denying resentencing is affirmed.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.