Filed 10/30/15  P. v. Worsham CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062027 |
| v. | (Super.Ct.No. FVA701524) |
| EDWARD MATTHEW WORSHAM, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

1

This is an appeal by defendant and appellant Edward Matthew Worsham from the trial court's order denying defendant's petition to recall his sentence under the Three Strikes Reform Act of 2012, added by Proposition 36 (the Act). (Pen. Code, § 1170.126.)[1] On appeal, defendant argues that the trial court erred in finding him ineligible for resentencing under the Act because he was not in actual possession of a firearm during his commitment offenses as required by section 1170.126, subdivision (e)(2). For the reasons explained *post*, we reject defendant's contention and affirm the trial court's order denying defendant relief under the Act.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

On March 3, 2007, law enforcement agents serving a search warrant knocked on the door of the mobilehome owned by defendant's mother; she answered the door and allowed the agents to enter. Defendant's wife, or significant other, was also present. When asked where defendant was, she pointed toward the bathroom, where defendant was taking a shower. The agents went into the bathroom, allowed defendant to dress, and brought him into the living room. Defendant initially gave a false name, but eventually gave his name as Edward Worsham. With defendant's clothes in the bathroom was a set of keys, including a house key and a lockbox key.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The factual background is taken from this court's nonpublished opinion in defendant's prior appeal. (*People v. Worsham* (May 15, 2012, E054396) [nonpub. opn.].)

Defendant's wife told the agents which bedroom belonged to her and defendant, and gave permission to search it. The agents found marijuana and drug paraphernalia, hypodermic needles, a wooden baton or billy club, and a locked safe. The safe was opened with one of the keys found in the bathroom. The safe contained a loaded .38–caliber revolver, additional bullets, two baggies of methamphetamine, an address book, a fixed-blade knife, clear plastic baggies, counterfeit money, and several items bearing the name of defendant's wife.

On December 21, 2010, a jury found defendant guilty of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1), possession of a firearm by a felon (former § 12021, subd. (a)(1); count 2), unlawful possession of ammunition (former § 12316, subd. (b)(1); count 3), and possession of a deadly weapon, to wit, a billy club (former § 12020, subd. (a)(1); count 5). The jury acquitted defendant of forgery (§ 476; count 4).[3] In a bifurcated proceeding, the trial court found true that defendant had suffered three prior prison terms (former § 667.5, subd. (b)) and five prior strike convictions (former §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). On July 22, 2011, defendant was sentenced to a total term of 25 years to life in state prison.

On November 6, 2012, the electorate passed Proposition 36, also known as the Act. Among other things, this ballot measure enacted section 1170.126, which permits persons currently serving an indeterminate life term under the "Three Strikes" law to file

---

[3] The People assert that the jury found true the gang participation allegations attached to the offenses. However, there is no indication in the record to show the gang enhancement allegations were found true by the jury.

a petition in the sentencing court seeking to be resentenced to a determinate term as a second striker. (§ 1170.126, subd. (f).) If the trial court determines, in its discretion, that the defendant meets the criteria of section 1170.126, subdivision (e), the court may resentence the defendant. (§ 1170.126, subds. (f), (g).)

Section 1170.126, subdivision (e), provides, as pertinent here, that a defendant is eligible for resentencing if he or she is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of section 667 or subdivision (c) of section 1170.12 "for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (§ 1170.126, subd. (e)(1).) The Act makes ineligible for resentencing those persons who "[d]uring the commission of the current offense, the defendant used a firearm, [or] was armed with a firearm . . . ." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii); see § 1170.126, subd. (e).)

On August 13, 2014, defendant filed a petition for resentencing under section 1170.126. On September 8, 2014, the trial court denied defendant's petition on the ground that one of his commitment offenses included possession of drugs while armed with a firearm in violation of Health and Safety Code section 11370.1.

Defendant timely filed an appeal on October 1, 2014. We note that in *Teal v. Superior Court* (2014) 60 Cal.4th 595, 597, our Supreme Court recently concluded decisions under the Act are appealable orders.

4

II

DISCUSSION

Defendant argues that he was eligible for resentencing under the Act because he was not in *actual* possession of a firearm during his commitment offenses. He maintains that the voters intended the "armed" exception to mean actual and physical possession of a firearm as opposed to including ready access to a firearm. He acknowledges that appellate courts have ruled otherwise, but requests that this court revisit the issue "based on arguments that do not appear to have been previously presented to any court."

A.      *The Act Generally*

"The Act amended sections 667 and 1170.12 and added section 1170.126; it changed the requirements for sentencing some third strike offenders. 'Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. [Citations.] The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to

5

public safety.  (§ 1170.126.)' "  (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 791 [Fourth Dist., Div Two] (*Brimmer*), review denied Jan. 14, 2015, quoting *People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168 (*Yearwood*).)

"Thus, there are two parts to the Act:  the first part is prospective only, reducing the sentence to be imposed in future three strike cases where the third strike is not a serious or violent felony [citations]; the second part is retrospective, providing similar, but not identical, relief for prisoners already serving third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126.)."  (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1292, italics omitted.)  "The main difference between the prospective and the retrospective parts of the Act is that the retrospective part of the Act contains an 'escape valve' from resentencing prisoners whose release poses a risk of danger."  (*Id.* at p. 1293.)

We note that defendant's current commitment offenses are not serious or violent felonies under section 667.5, subdivision (c), or section 1192.7, subdivision (c). However, the inquiry does not end with whether or not the current convictions are serious or violent felonies.  As previously noted, an inmate is eligible for such resentencing if none of his or her commitment offenses constitute serious or violent felonies and none of the enumerated factors disqualifying a defendant for resentencing under the Act apply. (§ 1170.126, subd. (e).)

Being armed with a firearm during the commission of a current offense is a disqualifying factor listed in section 667, subdivision (e)(2)(C)(iii), and section 1170.12,

subdivision (c)(2)(C)(iii).[4] Thus, under the plain language of the armed with a firearm exclusion, defendant is ineligible for resentencing relief as a second strike offender if his life sentence was "imposed" because "[d]uring the commission of the current offense, [he] . . . was armed with a firearm." (§§ 667, subd. (e)(2)(C)(iii) & 1170.12, subd. (c)(2)(C)(iii), both cross-referenced in § 1170.126, subd. (e)(2).)

"In approving the Act, the voters found and declared that its purpose was to prevent the early release of dangerous criminals and relieve prison overcrowding by allowing low-risk, nonviolent inmates serving life sentences for petty crimes, such as shoplifting and simple drug possession, to receive twice the normal sentence instead of a life sentence. (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1,

---

[4] Section 667, subdivision (e)(2)(C)(iii), provides: "[(e)(2)](C) If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a serious or violent felony as defined in subdivision (d), the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of subdivision (e) unless the prosecution pleads and proves any of the following: [¶] . . . [¶] (iii) During the commission of the current offense, the defendant used a firearm, [or] was *armed with a firearm . . . .*" (Italics added.)

Section 1170.12, subdivision (c)(2)(C)(iii), provides: "[(c)(2)](C) If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a felony described in paragraph (1) of subdivision (b) of this section, the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of subdivision (c) of this section, unless the prosecution pleads and proves any of the following: [¶] . . . [¶] (iii) During the commission of the current offense, the defendant used a firearm, [or] *was armed with a firearm . . . .*" (Italics added.)

7

subds. (3), (4) & (5), p. 105 (Voter Information Guide)[5]; see *People v. White* (2014) 223 Cal.App.4th 512, 522 . . . (*White*), review den. Apr. 30, 2014, S217030 [Fourth Dist., Div. One].)  The electorate also mandated that the Act be liberally construed to effectuate the protection of the health, safety, and welfare of the people of California.  (Voter Information Guide, *supra*, text of Prop. 36, § 7, p. 110; see *White*, *supra*, at p. 522.)  Accordingly, we liberally construe the provisions of the Act in order to effectuate its foregoing purposes and note that findings in voter information guides may be used to illuminate ambiguous or uncertain provisions of an enactment.  [Citations.]"  (*Brimmer*, *supra*, 230 Cal.App.4th at p. 793, citing *White*, *supra*, at p. 522 and *Yearwood*, *supra*, 213 Cal.App.4th at pp. 170-171.)

 B. "*Armed With a Firearm*" *Exclusion*

 Defendant contends that the armed with a firearm exclusion under section 1170.126 requires that an inmate be in *actual* and *physical* possession of a firearm.  We disagree.  As defendant acknowledges, appellate courts interpreting the language of "armed with a firearm" within the meaning of the Act have all concluded that " ' "[i]t is the availability—the ready access—of the weapon that constitutes arming." ' " (*White*, *supra*, 223 Cal.App.4th at p. 524, quoting *People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*), quoting *People v. Mendival* (1992) 2 Cal.App.4th 562, 574; accord, *Brimmer*, *supra*, 230 Cal.App.4th at p. 795.)

---

 **5**  We take judicial notice of the Voter Information Guide for the California General Election of November 6, 2012, relating to the Act.  (See Evid. Code, §§ 452 & 459.)

In *Brimmer*, *supra*, 230 Cal.App.4th 782, following an analysis of the firearm enhancement statutes, we held: "a defendant is armed if the gun has a facilitative nexus with the underlying offense (i.e., it *serves* some purpose in connection with it); however, this requires only that the defendant is aware during the commission of the offense of the nearby presence of a gun available for use offensively or defensively, the presence of which is not a matter of happenstance. This does not require any intent to use the gun for this purpose." (*Id.* at pp. 794-795, citing *People v. Pitto* (2008) 43 Cal.4th 228, 239-240.) We further explained: "Although the crime of possession of a firearm by a felon may involve the act of personally carrying or being in actual *physical* possession of a firearm, as occurred [in *Brimmer*], such an act is not an essential element of a violation of former section 12021, subdivision (a), because a conviction of this offense may also be based on a defendant's constructive possession of a firearm. [Citations.] . . . Hence, while the act of being armed with a firearm—that is, having ready access to a firearm (*Bland*, *supra*, 10 Cal.4th at p. 997)—necessarily requires possession of the firearm, possession of a firearm does not necessarily require that the possessor be armed with it." (*Brimmer*, at p. 795, citing *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 [a conviction for possession of a gun can also be based on constructive possession of the gun] and *People v. Mejia* (1999) 72 Cal.App.4th 1269, 1272 [defendant need not physically have the weapon on his person; constructive possession of a firearm "is established by showing a knowing exercise of dominion and control" over it].)

In *People v. Blakely* (2014) 225 Cal.App.4th 1042 (*Blakely*), the court held that a defendant convicted of being a felon in possession of a firearm is not automatically disqualified from resentencing because of that conviction. Such a defendant is disqualified for resentencing only if he or she had the firearm available for offensive or defensive use. (*Id*. at pp. 1048, 1056-1063.)

In *People v. Osuna* (2014) 225 Cal.App.4th 1020 (*Osuna*), the court held that where there are facts in the record of conviction showing the defendant was armed with a firearm—meaning it was available for immediate offensive or defensive use—during the commission of the defendant's current offense, the defendant is disqualified from resentencing under the Act even though he or she was convicted of possessing the firearm and not of being armed with it. (*Id*. at pp. 1026-1027.)

In *People v. Elder* (2014) 227 Cal.App.4th 1308 (*Elder*), the defendant was convicted of possession of a firearm by a convicted felon after a loaded gun was found on a shelf of an entertainment center in the defendant's apartment; another gun was found in an unlocked safe in a bedroom; and a photograph of defendant holding the gun on the entertainment center was also found. (*Id*. p. 1317.) At trial, the defendant claimed the guns belonged to his girlfriend and that he only visited on weekends. (*Ibid*.) The defendant appealed, claiming as a matter of statutory interpretation he cannot be armed while committing the crime of unlawful possession of a gun and that the prosecution had to plead and prove the circumstance in the proceedings underlying his commitment offense. (*Id*. at p. 1311.) Following an analysis of the Act and section 12022, the Court

10

of Appeal held that for purposes of section 1170.126, unlawful possession of a gun can constitute being armed with the gun during the possession if the defendant is aware during the commission of the offense of the nearby presence of a gun available for use offensively or defensively, the presence of which is not a matter of happenstance, and no intent to use the gun is required. (*Id.* at pp. 1312-1314.)

Similarly, in *People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007 (*Cervantes*) and *People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979 (*Martinez*), the court held a defendant may be barred from resentencing and is armed with a firearm even if he or she was not carrying a firearm on his or her person. (*Cervantes*, at pp. 1011-1018; *Martinez*, at pp. 984-985, 989-995.)

In *Martinez*, the question before the court was whether during the commission of violating Health and Safety Code section 11370.1, subdivision (a),[6] the defendant " 'was armed with a firearm' " within the meaning of sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), even if the defendant did not have *actual* possession of the firearm. (*Martinez*, *supra*, 225 Cal.App.4th at pp. 990-993.) There, law enforcement officers found the defendant in his kitchen, drug paraphernalia on his person, a bindle of heroin on the table before him, and a shotgun in one of the bedrooms and another gun in one of the closets. (*Id.* at p. 985 & fn. 2.) The defendant argued he

---

[6] Health and Safety Code section 11370.1, subdivision (a), proscribes the unlawful possession of any amount of a controlled substance "while armed with a loaded, operable firearm," and defines "armed with" as meaning "having available for immediate offensive or defensive use." (*Ibid.*)

11

was not armed during his heroin possession offense, for purposes of resentencing, because the gun was in a "separate room" from the heroin. (*Id*. at p. 986.) While the trial court agreed with the defendant, the Court of Appeal, reviewing these undisputed facts de novo, reversed. (*Id*. at pp. 990, 995.) The appellate court concluded the defendant, as a matter of law, "had the firearm available for immediate offensive or defensive use." (*Id*. at pp. 993, 995.)

Following a lengthy analysis of statutory construction, the electorate's intent, and an examination of the statutory scheme as a whole, the *Martinez* court explained: "In enacting Proposition 36 [the Act], the voters are thus deemed to have been aware of the longstanding statutory and judicially construed definitions of 'armed with a firearm.' Yet they failed to expressly limit the term when amending sections 667, subdivision (e) and 1170.12, subdivision (c) and enacting section 1170.126. This strongly suggests they intended to disqualify from resentencing those inmates who had a firearm available for immediate offensive or defensive use, and not merely those who carried a firearm on their person." (*Martinez*, *supra*, at p. 992, citing *Robert S. v. Superior Court* (1992) 9 Cal.App.4th 1417, 1421-1422.)

*Martinez* is consistent with other Court of Appeal cases addressing when a person is "armed." (*People v. Vang* (2010) 184 Cal.App.4th 912, 914 [gun in locked bedroom, drugs in various unlocked closets, armed]; *People v. Wandick* (1991) 227 Cal.App.3d 918, 921 [gun in bedroom, drugs throughout house, armed]; *People v. Delgadillo* (2005) 132 Cal.App.4th 1570, 1575 [Fourth Dist., Div. Two] ["[b]ecause the firearms were in

defendant's bedroom along with a significant sum of money, and in close proximity to cars in which defendant and his colleagues stored lab equipment and raw material, those firearms were available to defendant to use offensively or defensively at any time during the manufacturing process"]; *People v. Bradford* (1995) 38 Cal.App.4th 1733, 1739 [guns in cabin, marijuana growing nearby in compound, armed]; *People v. Garcia* (1986) 183 Cal.App.3d 335, 340, 350-351 [burglar was "armed" during crime when he left loaded handgun on low wall outside garage before entering house through garage].) *Martinez* is also consistent with *Bland*, *supra*, 10 Cal.4th at pages 995, 998, 1000-1001, 1002-1003, which articulates the broader principle that the "armed" enhancement to drug possession applies when a firearm is in "close proximity to the illegal drugs in a place frequented by the defendant," which allows the inference the firearm was, "at some point during" the continuous period of possession, close at hand.

The *Martinez* court also rejected the People's assertion that the opinion in *White*, *supra*, 223 Cal.App.4th 512, "could be read to limit exclusion from resentencing to those defendants who physically possessed a firearm during the commission of their commitment offense." (*Martinez*, *supra*, 225 Cal.App.4th at p. 990, fn. 10.) The *Martinez* court did not "read *White* so narrowly." (*Ibid.*) Neither do we, and reject defendant's claim that the *White* court "seemingly interpreted [the armed exclusion] to mean 'actual physical possession' of a firearm, and believed this conclusion was consistent with the purpose of the Act."

13

The defendant in *White* was convicted of possession of a firearm by a felon and the issue was whether he fell within the exclusion of having been "armed with a firearm." (*White*, *supra*, 223 Cal.4th at pp. 519, 520.) The *White* court found the "armed-with-a-firearm exclusion" applied because the record showed the defendant "was in [actual] physical possession of a firearm" and, therefore, had "ready access" to it. (*Id*. at pp. 523-524.) "The *White* court did not hold physical possession was the only circumstance in which a defendant could be found to be armed with a firearm within the meaning of section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii)." (*Martinez*, *supra*, 225 Cal.App.4th at p. 990, fn. 10.) Rather, following the analysis of *White*, the appellate courts have consistently held the inmate is ineligible for resentencing if the record of conviction shows the inmate "not only had a firearm 'in [his actual or constructive] possession or under [his] custody or control' [but that] he also was personally armed with the firearm on that date because he was carrying—and, thus, had ' "ready access" ' [citation] to—that firearm." (*White*, at p. 525; accord, *Elder*, *supra*, 227 Cal.App.4th at pp. 1312-1317; *Brimmer*, *supra*, 230 Cal.App.4th at pp. 797-801, 805-806; *Martinez*, supra, at pp. 990-993.)

"[A]rmed with a firearm" has been statutorily defined and judicially construed to mean having a firearm available for use, either offensively or defensively. (E.g., § 1203.06, subd. (b)(3); Health & Saf.Code, § 11370.1, subd. (a); *Bland*, *supra*, 10 Cal.4th at p. 997 [construing § 12022].) "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted"

14

(*People v. Weidert* (1985) 39 Cal.3d 836, 844 (*Weidert*)), "and to have enacted or amended a statute in light thereof" (*People v. Harrison* (1989) 48 Cal.3d 321, 329 (*Harrison*)). "This principle applies to legislation enacted by initiative. [Citation.]" (*Weidert*, *supra*, at p. 844.)

Where, as here, "the language of a statute uses terms that have been judicially construed, ' "the presumption is almost irresistible" ' that the terms have been used ' "in the precise and technical sense which had been placed upon them by the courts." ' [Citations.] This principle [likewise] applies to legislation adopted through the initiative process. [Citation.]" (*Weidert*, *supra*, 39 Cal.3d at pp. 845-846.) Defendant's attempts to distinguish *Weidert* and *Harrison* are unavailing.

" ' "[A] firearm that is available for use as a weapon creates the very real danger it will be used." [Citation.] Therefore, "[i]t is the availability—the ready access—of the weapon that constitutes arming." [Citation.]' [Citation.] The defendant is considered armed even if the weapon is inoperable [citation] or . . . unloaded [citation]." (*Brimmer*, *supra*, 230 Cal.App.4th at p. 799.) "[U]se of a firearm connotes something more than a bare potential for use[;] there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm . . . ." (*Bland*, *supra*, 10 Cal.4th at p. 997.)

Accordingly, we conclude the electorate intended "armed with a firearm," as that phrase is used in the Act, to mean having a firearm available for offensive or defensive use. (See *Blakely*, *supra*, 225 Cal.App.4th at p. 1052; *Brimmer*, *supra*, 230 Cal.App.4th

15

at pp. 795-801; *Osuna*, *supra*, 225 Cal.App.4th at pp. 1029-1030; *White*, *supra*, 223 Cal.App.4th at pp. 522-526; *Cervantes*, *supra*, 225 Cal.App.4th at pp. 1015-1016; *Martinez*, *supra*, 225 Cal.App.4th at pp. 989-990.)

C.      *Voters' Intent*

Defendant disagrees with the courts' reasoning and conclusions regarding the voters' intent in *Brimmer*, *Martinez*, *Osuna*, and *Blakely*, and argues that the "courts' conclusion that the voters meant ready access to a firearm, rather than actual physical possession, is not supported by any information provided in the ballot pamphlet which did not give a definition of armed." Defendant believes the term "armed" should be defined as understood by a layperson, i.e., "[actually] carrying a firearm or a deadly weapon and having actually possessed one during the commission of the current offense," and that "[t]he presumption that the voters were aware of the judicial construction of the term armed does not apply." We reject defendant's arguments, and adhere to the reasoning explained in *Brimmer*, *Martinez*, *Osuna*, and *Blakely*.

"In interpreting a voter initiative like [the Act], we apply the same principles that govern statutory construction. [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) The issue is one of the interpretation of a statute and its applicability to a given situation, a question of law we review independently. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Southern California*

16

*Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; see *People v. Cromer* (2001) 24 Cal.4th 889, 894.)

"In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008.) We also " 'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo*, *supra*, 22 Cal.4th at p. 685.) "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 212.) " ' "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" ' " (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 928.) " '[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole

17

may be harmonized and retain effectiveness." [Citation.]' [Citation.]" (*Horwich v. Superior Court*, *supra*, 21 Cal.4th at p. 276.)

Finally, we take into account the rule of lenity. " 'That rule generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. But . . . 'that rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" [Citations.]' [Citation.] 'The rule of lenity does not apply every time there are two or more reasonable interpretations of a penal statute. [Citation.] Rather, the rule applies " 'only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' " [Citation.]' [Citation.]" (*People v. Nuckles* (2013) 56 Cal.4th 601, 611, italics omitted.) "Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 783.)

An examination of the statutory scheme as a whole supports the conclusion the phrase "[d]uring the commission of the current offense, the defendant . . . was armed with a firearm," as used in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), and as disqualifies an inmate from resentencing pursuant to section 1170.126, subdivision (e)(2), extends to situations in which a defendant had a firearm available for use, either offensively or defensively.

As the *Osuna* court pointed out:  "The purpose of the three strikes law has been variously stated as being ' "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses" ' (*In re Young* (2004) 32 Cal.4th 900, 909 . . .) and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070).  Although the Act 'diluted' the three strikes law somewhat (*People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 167), '[e]nhancing public safety was a key purpose of the Act' (*id*. at p. 175)."  (*Osuna*, *supra*, 225 Cal.App.4th at pp. 1035-1036.)

"In enacting section 1170.126 as part of [the Act], the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term.  By including as a disqualifying factor an inmate's mere intent, during commission of the current offense, [the defendant used a firearm, was armed with a firearm or deadly weapon, or intended] to cause great bodily injury to another person, the electorate signaled its own intent that disqualifying conduct not be limited to what is specifically punishable as an offense or enhancement.  Apparently recognizing the maxim *expressio unius est exclusio alterius*—the expression of some things in a statute necessarily means the exclusion of other things not expressed (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 . . .)—voters rendered ineligible for resentencing not only narrowly drawn categories

19

of third strike offenders who committed particular, specified offenses or types of offenses, but also broadly inclusive categories of offenders who, during commission of their crimes—and regardless of those crimes' basic statutory elements—used a firearm, were armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (*Osuna*, *supra*, 225 Cal.App.4th at p. 1036.) Significantly, however, those categories, while broad, are not unlimited. Voters easily could have expressly disqualified any defendant who committed a gun-related felony or who possessed a firearm, had they wanted to do so. This is not what voters did, however.

Nothing in the language of section 1170.126, subdivision (e)(2), or the language of the statutory scheme as a whole, or in the materials presented to the voters in connection with the passage of the Act discloses any basis on which to infer that the voters intended by the passage of that initiative to depart from the long-settled meaning of the term "armed." To conclude, based on the ballot materials, that inmates convicted of offenses involving mere possession of a firearm are ineligible for resentencing, would read out of existence voters' specification, in the statutory language itself, that disqualification under section 1170.126, subdivision (e)(2), is limited to situations in which, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Although the literal language of a statute does not prevail if it conflicts with the lawmakers' intent (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; *People v. Belton* (1979) 23 Cal.3d 516, 526), it is

20

nevertheless the most reliable indicator of that intent (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919). It cannot be ignored. (See, e.g., *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.)

It is clear the electorate's intent was not to throw open the prison doors to all third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as posing little or no risk to the public. A felon who has been convicted of two or more serious and/or violent felonies in the past, and most recently had a firearm readily available for use, simply does not pose little or no risk to the public. "[T]he threat presented by a firearm increases in direct proportion to its accessibility. Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used." (*People v. Mendival*, *supra*, 2 Cal.App.4th at p. 573.) The same cannot necessarily be said about a firearm that is merely under the dominion and control of a person previously convicted of a felony. For instance, a firearm passed down through family members and currently kept in a safe deposit box by a convicted felon would be under his or her dominion and control, but would present little or no real danger.

In sum, we reject defendant's contention that the armed exclusion under the Act requires that an inmate be in actual possession of a firearm or deadly weapon during the commission of a commitment offense in order for the exclusion to apply.

21

## III

## DISPOSITION

The order denying defendant's petition for a recall of his life sentence is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:


HOLLENHORST

J.


CODRINGTON

J.

22